**William M. COLVIN, Appellant,**

v.

**Edward J. DERWINSKI, Secretary of Veterans Affairs, Appellee.**

**No. 90–196.**

United States Court of Veterans Appeals.

Argued Dec. 10, 1990.

Decided March 8, 1991.

Mark J. DeFrancisco, Boston, Mass., for appellant.

Joan E. Moriarity, with whom Raoul L. Carroll, Gen. Counsel, Barry M. Tapp, Asst. Gen. Counsel, and Pamela L. Wood, Deputy Asst. Gen. Counsel, were on the brief, Washington, D.C., for appellee.

Before KRAMER, MANKIN and HOLDAWAY, Associate Judges.

HOLDAWAY, Associate Judge:

This case concerns an appeal of a Board of Veterans' Appeals (BVA) decision that the veteran had not submitted evidence that was both new and material with his request to reopen his claim that he had incurred multiple sclerosis during service. We hold that the evidence submitted was new and material and provides a basis for reopening the claim to consider the new evidence in the context of the other evidence in order to review the former disposition. Further, we hold that the BVA panels must consider only independent medical evidence to support their findings rather than provide their own medical judgment in the guise of a Board opinion. We will remand to the BVA for proper consideration of all relevant evidence, issues, and regulations in a manner consistent with this opinion.

The law provides that when new and material evidence is presented or secured with respect to a claim which has been disallowed, "the [Secretary of Veterans Affairs] shall reopen the claim and review the former disposition." 38 U.S.C. § 3008 (1988). This review requires a two-step analysis. "First, the BVA must determine whether the evidence is 'new and material'. Second, if the BVA determines that the claimant has produced new and material evidence, the case is reopened and the BVA must evaluate the merits of the veteran's claim in light of *all* the evidence, both new and old." *Manio v. Derwinski*, 1 Vet.App. 140, 145 (1991) (emphasis in the original). *See also* 38 C.F.R. § 19.194 (1990).

Service connection may be granted for a disability resulting from disease or injury incurred or aggravated in service. 38 U.S.C. § 310 (1988). In determining whether multiple sclerosis was incurred in or aggravated by service of more than ninety days during war, the veteran is given the benefit of a presumption that if he develops multiple sclerosis to a degree of ten percent within seven years from the date of separation from service, such disease may be presumed to have been incurred in or aggravated by service, even though there is no evidence of such disease during the period of service. 38 U.S.C. § 312(a)(4) (1988). This presumption is re-

buttable by affirmative evidence to the contrary. 38 U.S.C. § 313 (1988).

The veteran served from March 21, 1966, through February 2, 1968. During his service in the Republic of Vietnam, he was wounded three separate times: shrapnel wounds to the head and right arm on February 26, 1967; shrapnel wounds to the right leg on March 26, 1967; and shrapnel wounds to the left forearm on May 10, 1967. On April 27, 1967, he was treated for a urinary problem that was diagnosed as a kidney stone. Medical evidence in the record indicates that urinary problems are a possible precursor of multiple sclerosis. The veteran was also treated during service for an injury to his right knee caused when it was hit by a forklift in September or October of 1966.

Lay testimony from the veteran's mother and ex-wife was submitted that he complained of blurring eyesight and numbness in his right leg and foot within two years of his discharge. Such symptoms are also possible precursors of multiple sclerosis according to medical evidence in the record. In 1982, the veteran was diagnosed as having developed multiple sclerosis. It is for that condition that he now claims service connection.

The first BVA decision in this case was issued on December 10, 1986. The evidence considered at that time was the service medical records, a March 22, 1973, Veterans Administration (now Department of Veterans Affairs) (VA) medical exam showing "joint mice" in the veteran's right knee (for which service connection was granted), private hospital records showing urinary tract problems, several statements from the veteran's private physician relating to the diagnosis of multiple sclerosis by that physician in 1985, the aforementioned letters from the veteran's mother about numbness in his right leg and blurriness in his eyesight during the two years following his discharge, and from the veteran's ex-wife relating an incident of numbness in the veteran's right foot and leg in 1972. The Board determined that no acceptable medical or lay evidence showed the characteristic manifestations of multiple sclerosis in the veteran during his active duty or within the seven-year presumptive period. *William M. Colvin*, loc. no. 637232 (BVA Dec. 10, 1986). The 1986 BVA decision was final as there was no judicial review available at that time.

The veteran was examined at a VA facility in March 1987 for purposes of determining *inter alia* compensation for the veteran's knee disability. As a part of that exam, the veteran was examined by Dr. Kassirer, a Department of Veterans Affairs neurologist. She stated in her report that "[t]he patient's multiple sclerosis began in the infantry while he was in Vietnam." The rating decision issued on June 8, 1987, again denied service connection for the multiple sclerosis. No appeal was taken to the BVA on this decision.

On August 11, 1988, the veteran submitted a request to reopen his claim on the basis of new and material evidence and attached a letter written by Dr. Cohen. The letter stated that Dr. Cohen had reviewed the veteran's medical records, including the service medical records, and that Dr. Cohen "[felt] the [veteran's] Multiple Sclerosis should be considered as service connected." Dr. Cohen also said, "I believe that there is also a general belief among physicians that stress in the military service can actually be a precipitating cause of the [multiple sclerosis]; there is not unanimous agreement on this point."

The second BVA decision was issued on December 18, 1989. The BVA considered statements made by the veteran at an appeal hearing, Dr. Cohen's letter, 1985 medical records, and a VA medical examination which revealed a diagnosis of multiple sclerosis. (It is unclear from the record whether the "diagnosis" referred to was from Dr. Kassirer's report of a neurological examination or from the Report of Medical Examination for Disability Evaluation) The finding of the Board was that "this evidence, while new, does not pertain to definitive clinical findings and does not provide a new factual basis so as to permit the grant of service connection for multiple sclerosis." *William M. Colvin*, loc. no. 934615, at 5 (BVA Dec. 18, 1989). We take

this to mean that the BVA did not find the evidence material.

## I.

The interpretation of a statute is a matter of law. When a statute uses a broad term such as [new and material], it is necessary that the administrative body and the court, as joint instrumentalities of government, fill in the factors which govern the proper determination of the question presented. In the first instance the administrative body, presumably expert in this field, must decide what are the relevant factors or standards. This determination is not conclusive on the courts because it is a decision on a question of law.

*Louisville and Kentucky R.R. v. Kentucky Railroad Commission,* 314 S.W.2d 940, 942 (Ky.Ct.App.1958).

■ The BVA's finding in this case that the veteran's evidence was not material was a conclusion of law. Conclusions of law by the BVA are entitled to no judicial deference by this Court. 38 U.S.C. § 4061 (1988).

■ New evidence is not that which is merely cumulative of other evidence on the record. *Williams v. Sullivan,* 905 F.2d 214, 216 (8th Cir.1990). Material evidence is relevant and probative of the issue at hand. *Chaney v. Schweiker,* 659 F.2d 676, 679 (5th Cir.1981). However, not every piece of new evidence, even if relevant and probative, will justify a reopening because some evidence is of limited weight and thus is insufficient to justify a new hearing. *Id.* The "bright line" rule in other federal courts is that to justify a reopening on the basis of new and material evidence, there must be a reasonable possibility that the new evidence, when viewed in the context of all the evidence, both new and old, would change the outcome. *See Chisholm v. Secretary of Health and Human Services,* 717 F.Supp. 366, 367 (W.D.Penn.1989).

We note that the Secretary of Veterans Affairs has recently promulgated a definition of "new and material":

New and material evidence means evidence not previously submitted to agency decisionmakers which bears directly and substantially upon the specific matter under consideration, which is neither cumulative nor redundant, and which by itself or in connection with evidence previously assembled is so significant that it must be considered in order to fairly decide the merits of the claim.

55 Fed.Reg. 52,273 (1990) (to be codified at 38 C.F.R. § 3.156(a) effective Jan. 22, 1991). We do not find this definition of "new and material" to be inconsistent with the standard set out in *Chisholm* that we adopt here. The "reasonable possibility" standard is clearer and more easily applied.

■ It is also important to note that the "benefit of the doubt" standard applicable to the fact finder in veterans benefits jurisprudence necessarily lowers the threshold of whether the new and material evidence is sufficient to change the outcome. *See* 38 U.S.C. § 3007(b)(1988); *Gilbert v. Derwinski,* 1 Vet.App. 49, 53 (1990).

■ In this case, the new evidence submitted consisted of opinions from two qualified expert witnesses that the veteran's multiple sclerosis was service connected. These opinions were based on possible symptoms of multiple sclerosis that occurred within the seven-year presumptive period. Dr. Cohen, an eminent specialist in the field, also stated that multiple sclerosis may be caused by the stress of military service itself. Neither of these statements is cumulative of the evidence considered in the 1986 BVA decision. Therefore, as the BVA correctly found, the statements qualify as "new." Moreover, both bear directly and substantially (to use the Secretary's wording) on the issue in dispute and, if believed, raise the reasonable possibility of a different decision by the BVA. We hold that these statements are "material."

## II.

In discussing Dr. Cohen's letter, the December 18, 1989, BVA decision said, "This evidence, while new, does not pertain to definitive clinical findings and does not provide a new factual basis so as to permit the grant of service connection for multiple

sclerosis." In attempting to buttress the finding that the evidence, while new, did not provide a new factual basis, the opinion went on to say:

> We note the veteran's allegation that a change in refractive error during service was indicative of multiple sclerosis. This shift in vision was not attributed to optic neuritis, often associated with the onset of multiple sclerosis. And, optic neuritis was not manifested within seven years after separation from service. Additionally, one episode of burning on urination during service does not represent either the onset of multiple sclerosis or bladder dysfunction often associated with the progression of the disease. Further, an episode of right foot numbness during 1972 has not been clinically verified and, without more, in terms of clinical findings, would not serve to show a definite symptom indicative of early multiple sclerosis.

*William M. Colvin*, loc. no. 934615, at 5 (BVA Dec. 18, 1989).

The BVA decision does not cite medical evidence of record in this case or recognized medical treatises to support these medical conclusions. The BVA, in finding that the new evidence did not provide a new factual basis for a claim was, in effect, refuting the expert medical conclusions in the record with its own unsubstantiated medical conclusions. BVA panels may consider only independent medical evidence to support their findings. If the medical evidence of record is insufficient, or, in the opinion of the BVA, of doubtful weight or credibility, the BVA is always free to supplement the record by seeking an advisory opinion, ordering a medical examination or citing recognized medical treatises in its decisions that clearly support its ultimate conclusions. *See* 38 U.S.C. § 4009 (1988); *Murphy v. Derwinski*, 1 Vet.App. 78, 81 (1990). This procedure ensures that all medical evidence contrary to the veteran's claim will be made known to him and be a part of the record before this Court.

Lest we be misunderstood, we are not saying that the BVA was compelled to ac-

cept the opinions of Drs. Cohen and Kassirer. We merely state that having reached a contrary conclusion, it was necessary for the panel to state its reasons for doing so and, more importantly, point to a medical basis other than the panel's own unsubstantiated opinion which supported the decision.

REVERSED and REMANDED to the BVA for action consistent with this opinion.