Steve **MAGUSIN, Jr.,** Appellant,

v.

Edward J. **DERWINSKI, Secretary of Veterans Affairs,** Appellee.

No. 91–612.

United States Court of Veterans Appeals.

March 23, 1992.

Before IVERS, Associate Judge.

## MEMORANDUM DECISION

IVERS, Associate Judge:

Appellant, Steve Magusin, Jr., appeals a December 12, 1990, decision of the Board of Veterans' Appeals (BVA or Board). In that decision, the BVA denied an increased evaluation for anxiety reaction with depression, currently rated as 30% disabling. The Court has jurisdiction of the case under 38 U.S.C. § 7252(a) (formerly § 4052(a)).

Appellant's brief was filed on September 11, 1991, seeking a reversal of the BVA decision on the grounds that the Board erred in substituting its unsubstantiated medical opinion for those of medical experts and that the Board's determination that the current clinical findings do not show more than definite impairment of social and industrial adaptability was clearly erroneous. After having been granted two extensions of time to file a brief, the Secretary of Veterans Affairs (Secretary), on the final day of the second extension of time, filed a motion for remand and to stay further proceedings. In his motion, the Secretary specified three reasons for requesting remand: 1) the BVA did not provide an analysis of the probative weight and the credibility of certain medical and lay evidence; 2) the Board did not provide independent medical authority for its finding that the veteran's symptomatology does not demonstrate more than definite social and industrial impairment; and 3) the Board did not articulate sufficiently detailed reasons or bases for its findings and conclusions. Appellee's Motion at 4. Appellant filed an opposition to the motion for remand on December 30, 1991, arguing that this is not a case where the decision of the Board is so deficient that it is unreviewable and therefore warrants remand, but rather that this is a case where the BVA decision is wrong and warrants reversal. Appellant's Opposition at 3. The Court agrees that the BVA decision is not so deficient that it is unreviewable. Nor is the Secretary's motion so lacking in detail or precision that the Court is left without benefit of the Secretary's position on the issues in this case. Therefore, to order the Secretary to submit a brief in this case would, most likely, result in a reiteration of the argument that the Secretary has made in his motion. Therefore, upon review of the appellant's brief, the Secretary's motion and the record, the Court holds that the BVA erred in this case (1) when it substituted its own medical judgment for that of medical experts; (2) when it ignored the statement of a physician; and (3) when it did not apply 38 C.F.R. § 4.16 pertaining to individual unemployability to this case. Moreover, the Court holds that the BVA's determination that the veteran's disability warrants no more than a 30% rating was not a plausible finding in light of all the evidence of record but instead was clearly erroneous. Accordingly, the decision of the BVA denying appellant an increased disability rating is reversed and the matter remanded for the assignment of an appropriate rating.

The veteran served in the U.S. Army Air Corps as an air cadet from June 1943 to September 1944 and was given a medical discharge for psychoneurosis and a schizoid personality. R. at 92. He had been hospitalized for three months for a nervous breakdown in 1944. R. at 28. In 1985, he was hospitalized for two months for depression. He attempted suicide four times in the past. R. at 26. In 1987, the BVA

granted an increase in the veteran's service-connected anxiety reaction with depression from 10% to 30%. In addition to his psychological problems, the veteran suffers from heart problems, specifically peripheral vascular disease, angina pectoris, carotid stenosis, and generalized arteriosclerosis with myocardial infarction. R. at 39–40, 92–93. He has undergone several procedures to treat his heart problems, including bypass surgery. R. at 92. The veteran worked for the U.S. Post Office for approximately 33 years until he was forced to retire in 1975 because of his medical condition. He has not worked since then. R. at 26–29.

In *Colvin v. Derwinski*, 1 Vet.App. 171 (1991), this Court held that when the BVA declines to accept expert opinions regarding a veteran's condition, it must provide reasons for doing so and support its decision with medical bases other than the Board's own unsubstantiated opinion. *Colvin*, 1 Vet.App. at 175. In this case, a private clinical psychologist, who had been seeing the veteran for individual therapy sessions since June 1988 and whose mental health facility had been treating the veteran since 1986, wrote a letter in April 1990 to the Department of Veterans Affairs (VA) in which she reported that

> [a]lthough Mr. Magusin has, in fact[,] been able to realize short periods of an increased ability to function with out [sic] debillitating [sic] depression, loss of emotional control and low self esteem, such periods are unstabilized and the depressive orientation recurs with consistency which severly [sic] interferes with the clients [sic] ability to function.

R. at 150. In its decision, the BVA "noted the clinical psychologist's opinion that the veteran experiences only short periods of increased ability to function", but, without citing any independent medical evidence to support its conclusion, stated that nevertheless "it is our determination that current manifestations of anxiety reaction with depression are adequately compensated by the 30 percent disability rating in effect." *Steve Magusin, Jr.*, BVA 90–45710, at 5 (Dec. 12, 1990). Such a determination, unaccompanied by independent medical evidence supporting it, is contrary to this Court's holding in *Colvin* and as such constitutes error.

On October 17, 1988, Dr. Alejandro Zapata, a private physician, wrote a letter to the veteran's representative stating that the veteran had been his patient since January 1986 and expressing the opinion that the veteran "is 100% disabled due to emotional problems". Dr. Zapata suggested a re-evaluation of the veteran's disability status. R. at 10. The veteran submitted this letter to the VA Regional Office (RO) in order to reopen his claim for an increase in his disability rating from 30% to 100%. The Regional Office reopened the claim but, in a November 21, 1988, rating decision, denied the increase, stating that the doctor's statement "offers opinion but no ... findings supporting conclusion of increased impairment." R. at 12. The RO did not conduct an examination of the veteran. It is this rating decision with which the veteran filed a Notice of Disagreement which resulted in the BVA decision which is the subject of this appeal. However, in its decision, the Board never mentions Dr. Zapata's letter. Although the Board may discount the credibility of a physician's statement or offer evidence which contradicts the physician's statement and tell why it finds such contrary evidence more persuasive, this Court has held that the Board is not free to ignore or disregard the opinion of a treating physician. *Sanden v. Derwinski*, 2 Vet.App. 97, 101 (1992); *Willis v. Derwinski*, 1 Vet.App. 66, 70 (1991). To do so, as the Board did in this case, constitutes error.

In *Akles v. Derwinski*, 1 Vet.App. 118 (1991), this Court held that "[t]here is no requirement that a veteran must specify with precision the statutory provisions or the corresponding regulations under which he is seeking benefits." *Akles*, 1 Vet.App. at 121. Instead, the VA has an affirmative duty to assist the veteran in developing his claim by informing him that he may be eligible for benefits under a particular provision. *Id.; Douglas v. Derwinski*, 2 Vet. App. 103 (1992); 38 U.S.C. § 241(2) (reenacted as § 7722(c) by Pub.L. No. 102–83,

§ 2(a), 105 Stat. 378 (1991)); 38 U.S.C. § 5107(a) (formerly § 3007(a)). The record shows that the veteran has not worked since 1975 when he was forced to retire from his job with the Post Office. Moreover, a physician has rendered an opinion that the veteran is 100% disabled and a clinical psychologist has stated that the veteran's depression recurs with consistency and severely interferes with his ability to function. While the evidence considered in light of the entire record may or may not entitle appellant to a total schedular rating for his disability, the Board should have informed the veteran that he may be eligible for compensation under 38 C.F.R. § 4.16(b) which provides for consideration of total disability ratings for "veterans who are unemployable by reason of service-connected disabilities, but who fail to meet the percentile standards" of 38 C.F.R. § 4.16(a). *See Mingo v. Derwinski*, 2 Vet. App. 51, 53 (1992) (38 C.F.R. § 4.16(b) is the applicable regulation for consideration of unemployability based on the veteran's service-connected disability which had a schedular rating of 30%). By not informing the veteran that he may consider this path to compensation, the VA failed in its duty to assist the veteran.

In addition to the letters of Dr. Zapata and the clinical psychologist, the evidence of record considered in its entirety supports the veteran's claim for an increased disability rating. The evidence reflects that, for six weeks in early 1989, the veteran was treated in the psychiatric ward of a VA hospital for atypical depression. R. at 21, 92. Records of his outpatient psychotherapy sessions in 1989 reveal depression, crying spells, marital discord, and suicidal ideation without plans. R. at 30–38. The record of one psychotherapy session in December 1989 showed the veteran to be in "good spirits", but the assessment was depression. R. at 42. In January 1990, a doctor described the veteran as "crying, shaky [sic], holds his head while crying." R. at 43. At a Regional Office hearing in January 1990, the veteran and his wife both testified about his dependence on his wife to do practically everything, his inability to complete projects around the house,

and his frequent crying spells. R. at 47. In addition, the veteran testified that he had sought the treatment of private psychiatrists as well as VA psychiatrists and that the doctors often wanted to admit him to the hospital but he resisted admission because he was dissatisfied with hospital care. R. at 48. He also pointed out that he used to be active in his church, often delivering communion to the sick, but that since his last hospitalization, he was unable to hold the Host in his hand. R. at 52. He also stated that everything threatens him and that he cannot function normally. R. at 61. It was noted in the hearing transcript that the hearing had to be stopped periodically because Mr. Magusin had crying spells. R. at 62.

In February 1990, the veteran was given a VA psychiatric examination in which the VA doctor described the veteran as "tense and methodical but quite rational.... No evidence of delusional thinking or hallucinated experiences were [sic] identified. His sensorium is clear. He is correctly oriented for time and place.... He is in good contact with reality and there is no evidence of psychotic thinking." R. at 92. From this description, the BVA found that "the veteran is rational and in good contact with reality." *Magusin*, BVA 90–45710, at 5. However, the Board noted, but did not comment on, the doctor's additional description of the veteran's behavior during the examination: "I asked him to perform simple calculation [sic] which he did rapidly and correctly. I then asked him to substract [sic] serial sevens from one hundred. He got as far as 93 and then said I don't know. He began to cry noisily in his hands. His response seemed out of proportion to the stimulus." R. at 92. The doctor diagnosed him as follows: anxiety reaction with depression; dependent personality disorder; generalized arteriosclerosis with M[yocardial] I[nfarction] and open heart surgery; stress, specific stress are [sic] not identified. The doctor also noted that the veteran's level of adjustment revealed a moderately impaired social adjustment and a severely impaired vocational adjustment. R. at 92–93.

It is true that "this Court is not permitted to substitute its judgment for that of the BVA on issues of material fact; if there is a 'plausible' basis in the record for the factual determinations of the BVA ... we cannot overturn them." *Gilbert v. Derwinski*, 1 Vet.App. 49, 53 (1990). However, where there is no plausible basis in the record for the factual determinations of the BVA, the Court can and must overturn them. The evidence revealing more than "definite" industrial impairment includes Dr. Zapata's opinion that the veteran is 100% disabled, the clinical psychologist's opinion that the veteran's condition "severely" interferes with his ability to function, and the VA doctor's diagnosis that his vocational adjustment is "severely" impaired. Although the VA doctor did report that the veteran was rational and in good contact with reality, the Court holds that when these statements are viewed in light of the entire record, it was not plausible to conclude that the veteran's condition did not warrant an increase.

Although it was necessary for the Court to specify in detail the reasons for the reversal of the BVA decision here, the case nevertheless is one "of relative simplicity" whose outcome is controlled by our precedents and is "not reasonably debatable". It is therefore appropriate for summary disposition. *Frankel v. Derwinski*, 1 Vet. App. 23, 25–26 (1990). Accordingly, upon consideration of appellee's motion for remand, appellant's brief, and a review of the record, it is the holding of the Court that appellee's motion is denied, the decision of the BVA is REVERSED, and the case is REMANDED for further development consistent with this decision and for the assignment of an appropriate rating.