Frances B. LOWE, Appellant,

v.

Edward J. DERWINSKI, Secretary of Veterans Affairs, Appellee.

No. 91–107.

United States Court of Veterans Appeals.

June 19, 1992.

Before STEINBERG, Associate Judge.

### MEMORANDUM DECISION

The appellant, Frances B. Lowe, appeals from a November 29, 1990, decision of the Board of Veterans' Appeals (Board or BVA) denying her husband, a World War II veteran, service-connected disability compensation for ankylosing spondylitis. Because the Court finds no "plausible" basis in the record for the BVA's determination that the veteran's ankylosing spondylitis was not service-connected, that decision will be reversed and the record remanded for assignment of an appropriate service-connected disability rating.

The veteran served on active duty in the U.S. Army from July 30, 1942, to November 5, 1945. While serving in Europe during World War II, a plane carrying the veteran was shot down on July 25, 1944, and he was forced to escape by parachute. He reported that he was forced to exit the plane quickly because it was on fire, and that he jumped from the aircraft holding his parachute in his hands and was able to put only one arm through the harness before having to pull the ripcord. He stated that he suffered a "vicious snap" to his back when his parachute opened. R. at 85. An August 22, 1945, Army Physical Examination for Flying reported that he suffered an acute lumbar strain as a result of this incident. R. at 65. The veteran apparently was a prisoner of war of the German government from July 25, 1944, until April 30, 1945, although the BVA stated that his period as a prisoner of war had not been officially verified. *Samuel F. Lowe, Jr.,* BVA 90–40609, at 2 (Nov. 29, 1990).

In 1979, the veteran submitted a claim for service-connected disability compensation for, among other things, ankylosing spondylitis, which he reported had first been diagnosed in August 1969. R. at 39. He submitted private medical records indicating findings in 1969 of symptoms consistent with "ankylosing spondylitis (Marie–Strumpel arthritis of the spine)", and a diagnosis of "probable rheumatoid spondylitis". R. at 75. An August 1974 hospital record indicates a diagnosis of "Marie Strumpell ankylosing spondylarthritis involving the thoracic and lumbar spine". R. at 82. Veterans' Administration (now Department of Veterans Affairs) (VA) records indicated that the veteran had received treatment for lumbar strain from November 1946 to November 1947. R. at 24–25.

In 1979, the veteran also submitted several physician's letters in support of his claim for service connection of ankylosing spondylitis. He submitted a 1979 letter from Dr. Hoyt Trimble stating that he had treated the veteran for a spinal disorder in the 1950s. R. at 68. A 1979 letter from Dr. Wells Riley stated that he had treated the veteran from August 1960 to August 1973, at which time the veteran was trou-

bled by backache, and that in November 1966 the veteran's X-rays had revealed ankylosing arthritis in the lumbosacral spine. R. at 69. Dr. Riley further stated: "It is my opinion that your current back problems with spondylitis is [sic] probably related to your back injury sustained in 1944." R. at 69. Also in a 1979 letter, Dr. J.C. Tanner, Jr., who had examined the veteran in 1974, stated: "It is my professional opinion that you have been suffering since 1967 with ankylosing spondylitis (Marie–Strumpel Spondylitis). It is my professional opinion that this is directly and proximately the result of a parachute jump which I am advised occurred in July of 1944 and resulted in your imprisonment in a prisoner-of-war camp in Germany." R. at 79.

The veteran's claim was denied by a VA rating decision on March 21, 1980, and the veteran did not appeal. R. at 105.

▌In 1988, the veteran sought to reopen his claim, and submitted several items of evidence. He submitted a 1988 letter from Dr. William B. Trimble, stating that, on several occasions in the 1950s, he had treated the veteran for lower back problems "which we now recognize as the prelude to Ankylosing Spondylitis but did not so recognize in the 1950's". R. at 109. Dr. Trimble stated: "It is my medical opinion, that [the veteran] has suffered from Ankylosing Spondylitis and will suffer from the disease itself for the rest of his life.... It is my opinion that this problem had its beginning while [the veteran] was in the military service and has progressed to its present state of disability." *Ibid.* In October 1989, the veteran was evaluated by a physician, Dr. William P. Maier, a rheumatologist who was, for that purpose, apparently under contract with VA, and who stated:

> The patient's ankylosing spondylitis was not diagnosed until 1974 but clearly was present many years prior to this with the diagnosis apparently hampered by lack of medical knowledge and inadequate medical documentation. Ankylosing Spondylitis has only been a recognized disease for approximately 15 to 20 years.

It is well known that ankylosis spondylitis and other spondyloarthropathies, although associated with genetic predisposition[,] are initiated by external stimuli such as infection and/or trauma. After examining Mr. Samuel Lowe and reviewing his medical history, I am convinced that this [veteran], an ex POW, has a legitimate claim for disability from injury and resulting problems sustained while being shot down in the line of duty for his Country.

R. at 226. The veteran also submitted a February 1990 letter to the veteran from Dr. Joseph I. Miller, Jr., who stated:

> Your back and spine X-rays, when I examined you in November 1984, in addition to your lung lesion showed progression of ankylosing spondylitis up the cervical spine from the area of the hips and into the lower neck. This most likely resulted from your parachute jump on July 25, 1944 which resulted in your original injury to your lower back.... I feel it is fair to say this is all probably related to your original injury and progression although one must take into account that a number of years have passed since your original injury. However, it would be fair to say it most probably was related to it.

R. at 260.

In its November 29, 1990, decision, the Board stated:

> Because of the lack of continuity of symptomatology from the time of the injury to the appearance of ankylosing spondylitis many years later, and because of the nature of ankylosing spondylitis as a systemic disease most likely of genetic etiology, we cannot concur with the opinions of several physicians that trauma in service resulted in the veteran's ankylosing spondylitis.

*Lowe, Jr.*, BVA 90–40609, at 5.

The Court holds that the statements of Drs. Trimble, Maier, and Miller constituted "new and material" evidence requiring VA to reopen the veteran's previously denied claim. *See* 38 U.S.C. §§ 5108, 7104(b) (formerly §§ 3008, 4004); *Jones v. Derwinski,* 1 Vet.App. 210, 213–15 (1991); *Colvin v.*

*Derwinski,* 1 Vet.App. 171, 174 (1991); *Manio v. Derwinski,* 1 Vet.App. 140, 145 (1991). These medical opinions clearly buttress the case for direct service connection under 38 C.F.R. § 3.303(d) and also relate to continuity of symptomatology for a chronic condition and the possibility that the veteran's condition resulted from trauma in service.

■ The Court is required to "hold unlawful and set aside" any "clearly erroneous" findings of fact made by the BVA. 38 U.S.C. § 7261(a)(4) (formerly § 4061); *see Gilbert v. Derwinski,* 1 Vet.App. 49, 52 (1990); *Hanson v. Derwinski,* 1 Vet.App. 512, 516 (1991). A BVA finding of fact is "clearly erroneous" when there is no "plausible" basis in the record to support it. *Gilbert,* 1 Vet.App. at 53.

■ Here, the Court finds no plausible basis for the BVA's conclusion that the veteran's ankylosing spondylitis was not service connected. All of the evidence of record, including the opinions of five different physicians, and particularly the expert rheumatologist apparently selected by VA, supports the veteran's contention that his condition was caused or aggravated by his back injury sustained in service. VA regulations provide:

> Service connection may be granted for any disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disease was incurred in service. Presumptive periods are not intended to limit service connection to diseases so diagnosed when the evidence warrants direct service connection. The presumptive provisions of the statute and the [VA] regulations implementing them are intended as liberalizations applicable when the evidence would not warrant service connection without their aid.

38 C.F.R. § 3.303(d) (1991). Where, as here, all of the pertinent evidence of record supports a veteran's claim for service connection, the BVA's denial of service connection must be reversed as clearly erroneous. *See Hanson,* 1 Vet.App. at 516; *Meister v. Derwinski,* 1 Vet.App. 472, 473–74 (1991).

■ The two reasons given by the BVA for its denial of the veteran's claim—the absence of proof of continuity of symptomatology and the fact that ankylosing spondylitis may be a condition of genetic origin—are inadequate as a matter of law and, therefore, do not provide a plausible basis for the denial of benefits.

As 38 C.F.R. § 3.303(d) makes clear, continuity of symptomatology is not necessary when all the evidence of record supports a finding of direct service connection. *See Godfrey v. Derwinski,* 2 Vet.App. 352, 356 (1992); *Douglas v. Derwinski,* 2 Vet.App. 103, 108–09 (1992); *Hanson,* 1 Vet.App. at 516–17; *see also Sokowski v. Derwinski,* 2 Vet.App. 75, 78 (1991). Therefore, the BVA may not rely on an asserted absence of continuity of symptomatology as a basis for denying the veteran's claim in this case.

■ Furthermore, the BVA's statement that "ankylosing spondylitis [is] a systemic disease most likely of genetic etiology" is also in this case an impermissible basis for denying the veteran's claim. The BVA may not rely on its own unsubstantiated medical conclusions to refute expert medical conclusions in the record. *Colvin,* 1 Vet.App. at 175; *Meister,* 1 Vet. App. at 473. If the BVA believes the medical evidence of record to be of doubtful weight or credibility, it is always free "to supplement the record by seeking an advisory opinion, ordering a medical examination or [quoting] recognized medical treatises in its decisions that clearly support its ultimate conclusions." *Colvin, supra.* In the present case, five physicians expressed opinions that the veteran's ankylosing spondylitis was or probably was the result of his in-service trauma. Additionally, Dr. Maier, the expert rheumatologist selected by VA, clearly stated that, although ankylosing spondylitis is associated with genetic predisposition, "[i]t is well known" that it "is initiated by external stimuli such as infection and/or trauma". R. at 226. In light of this large body of medical evidence supporting the veteran's claim that his ankylosing spondylitis was caused or aggravated by his in-service trauma, and the total absence of contrary evidence or quotation

from recognized medical treatises, there was no plausible basis for the BVA's conclusion that the veteran's condition did not result from the in-service trauma because his condition is "most likely of genetic etiology".

Upon consideration of the record, the motion of the Secretary of Veterans Affairs (Secretary) for summary affirmance, and the appellant's informal brief, it is held that November 29, 1990, BVA decision is reversed, and the record is remanded to the BVA, the Court retaining jurisdiction, for assignment of an appropriate service-connected disability rating for the veteran's ankylosing spondylitis. It is further held that summary disposition is appropriate because the case is one "of relative simplicity" and the outcome is controlled by our precedents and is "not reasonably debatable". *Frankel v. Derwinski*, 1 Vet. App. 23, 25–26 (1990). The Secretary shall file with the Clerk and serve upon the appellant a copy of any Board final decision on remand. Within 14 days after such filing, the appellant shall notify the Clerk whether she desires to seek further review by the Court.

REVERSED AND REMANDED.