**Allen NICHOLS, Appellant,**

v.

**Jesse BROWN, Secretary of Veterans Affairs, Appellee.**

**No. 90–1271.**

United States Court of Veterans Appeals.

April 19, 1993.

Before STEINBERG, Associate Judge.

## MEMORANDUM DECISION

STEINBERG, Associate Judge:

The pro se appellant, veteran Allen Nichols, appeals from a September 17, 1990, decision of the Board of Veterans' Appeals (BVA or Board) denying entitlement to service connection for a back disability and a psychiatric disability. *Allen C. Nichols,* BVA 90–31896 (Sept. 17, 1990). The Secretary of Veterans Affairs (Secretary) has filed a motion for summary affirmance. Summary disposition

is appropriate in this case because it is one "of relative simplicity" and the outcome is controlled by the Court's precedents and is "not reasonably debatable". *Frankel v. Derwinski*, 1 Vet.App. 23, 25–26 (1990).

## I. Background

The veteran served in the United States Navy from November 1, 1968, to December 23, 1968. R. at 9. He subsequently served in the United States Army from May to August 1978, but that service was voided, apparently because upon enlistment in the Army he had failed to reveal his earlier military service. R. at 36, 64. The report of his November 1968 entrance physical examination was negative, except for faulty vision. R. at 12–13. Navy medical records indicate treatment for cellulitis of both feet. R. at 19–20. According to the December 19, 1968, report of a Navy Aptitude Board, the veteran "had spent fourteen days in a dispensary and seven days in the Special Holding Company" and was referred for psychiatric evaluation following a report of poor training performance by his company commander. R. at 14. According to the Aptitude Board's report, the psychiatric examination revealed that the veteran had been under psychiatric care since a 1954 car accident, and had demonstrated belligerent and impulsive behavior while in training. The Aptitude Board recommended he be discharged as unsuitable for further training, but further stated: "This member has no mental or physical disability that would warrant his discharge by reason of physical disability." *Ibid.* He was given an honorable discharge on December 28, 1968. R. at 9.

According to Veterans' Administration (now Department of Veterans Affairs) (VA) treatment records dated May 1975, the veteran sought treatment for chronic headaches, which, he reported, had had their onset in 1974. R. at 32. The examiner's assessments were, as relevant, "chronic pain syndrome" and "borderline personality disorder". R. at 34. Army medical records of the veteran's voided Army service reveal no treatment for either back or psychiatric complaints; the report of his July 1978 Army discharge examination was similarly negative except for complaints of ankle pain. R. at 43–44. A

mental status evaluation conducted by the Army in August 1978 described the veteran's behavior as "normal" and stated: "No psychiatric diagnosis". R. at 45.

In July 1981, the veteran, complaining of "collapsed vertebrae", sought treatment at a VA facility. R. at 79. An orthopedic consultation was recommended, but it is unclear whether any consultation was carried out. R. at 81. An October 1982 VA medical certificate noted "[history] of scoliosis" and stated that the veteran's right leg was approximately one inch shorter than his left. *Ibid.* A January 1983 VA orthopedic examination noted the veteran's complaint of chronic low back pain of one year's duration "dating from a lifting injury". R. at 84. A December 1983 VA Pain Clinic evaluation report stated: "[H]is back and neck pain began approximately four years ago following his lifting a heavy object while employed for a cement company." *Ibid.* According to the report, the veteran stated that during his Navy service "he was beaten by a pipe which was rolled up in a towel" because "he could not perform up to the level of others in his company". R. at 115.

As to his headaches, in May 1983, after the veteran had complained of headaches and "memory problems", a VA neurological examination resulted in an impression of tension headaches. R. at 95–96. According to the December 1983 VA Pain Clinic evaluation, the veteran had suffered from bifrontal headaches for the past 15 years. R. at 113. With regard to his headaches, that evaluation report noted the following: At the time of the 1954 car accident the veteran had suffered a head injury and had lost consciousness for three days; in November 1971 he had been struck on the right temple by a heavy pipe, requiring hospitalization; and in June 1983 he had been involved in an automobile accident, striking his head on the steering wheel, and was hospitalized again. *Ibid.* That evaluation report further noted that a June 1975 neuropsychological evaluation had reflected "mild to moderate, fairly generalized cerebral dysfunction ... most compatible with some sort of essentially static neurological condition which has affected the hemispheres rather diffusely", and stated

that a CAT scan performed in June 1983 had revealed "cavieum velum intraposetum" [the Court is unable to ascertain the meaning of this phrase]. *Ibid.*

In January 1984, the veteran underwent a VA neuropsychological examination. According to the examination report, the veteran stated that he had suffered cardiac arrest in July 1982, losing consciousness for approximately 20 hours. R. at 124. The report stated that neurological testing did not reveal any significant change since the most recent VA neuropsychological examination, which had been conducted in June 1975: "[A]nalysis of [the veteran's] performances on the neuropsychological battery yields again an overall picture of mild to moderate, fairly generalized cerebral dysfunction." R. at 125.

In June 1984 the veteran filed a claim for entitlement to service connection for a back condition, arthritis, and a psychiatric disorder. R. at 129–30. After the VA regional office (RO) had denied that claim, the veteran appealed to the BVA, which denied his claim in a December 1985 decision. R. at 137–43. In February 1988, he sought reopening of his back, arthritis, and psychiatric-disorder claims and, in June 1988, the RO confirmed the prior denials. R. at 156. In April 1989, after the veteran had testified under oath at a personal hearing held at the Denver RO, the hearing officer confirmed the denial of service connection for a back disorder and a psychiatric disorder. R. at 172–74. On appeal, the BVA issued the adverse decision here on appeal.

## II. Analysis

■ Pursuant to 38 U.S.C.A. § 5108 (West 1991), the Secretary must reopen a previously and finally disallowed claim when "new and material evidence" is presented or secured with respect to that claim. *See* 38 U.S.C.A. § 7105(c) (West 1991). In considering claims to reopen previously and finally disallowed claims, the Board must conduct a "two-step" analysis. *Manio v. Derwinski,* 1 Vet.App. 140, 145 (1991). First, it must determine whether the evidence presented or secured since the prior final disallowance of the claim is "new and material". *Ibid.* If it is, the Board must then review the new evidence "in the context of" the old to deter-

mine whether the prior disposition of the claim should be altered. *Jones (McArthur) v. Derwinski,* 1 Vet.App. 210, 215 (1991). Evidence is "new" if it is not "merely cumulative" of evidence already in the record; it is "material" if it is "relevant [to] and probative of the issue at hand" and there is a "reasonable possibility that the new evidence, when viewed in the context of all the evidence, both new and old, would change the outcome." *Colvin v. Derwinski,* 1 Vet.App. 171, 174 (1991). The determination as to whether evidence is "new and material" is a question of law which this Court reviews de novo under 38 U.S.C.A. § 7261(a)(1) (West 1991). *See Masors v. Derwinski,* 2 Vet.App. 181, 185 (1992); *Jones,* 1 Vet.App. at 213; *Colvin, supra.*

In the instant case, the Board concluded as a matter of law that, although the evidence received since its August 1986 decision was, "in part, new", that evidence did not establish a "new factual basis warranting allowance of service connection for a chronic back disability or a chronic acquired psychiatric disability". *Nichols,* BVA 90–31896, at 7. It is unclear whether the Board found the evidence not new and material and thus did not reopen the claims or whether it reopened the claims and denied them on the merits.

■ The newly submitted evidence considered by the Board includes private hospital records detailing emergency treatment following the veteran's 1954 automobile accident (R. at 1–7); the report of a 1960 school evaluation, noting academic difficulty due to organic brain damage caused by the automobile accident (R. at 8); a September 1984 psychiatric evaluation report prepared by the Colorado Department of Social Services (R. at 131–36); records of treatment at the University of Colorado Medical Center, apparently dating from 1983 (R. at 153–55); 1986 treatment records from a private clinic (R. at 150–52); and VA 1986 medical center records (R. at 146–48). Although new, none of these records discusses whether the veteran's psychiatric disorder or back condition were incurred in or aggravated during either of his periods of service, and they are thus not material.

The newly submitted evidence also includes the veteran's sworn testimony at both the March 1989 Denver RO hearing (R. at 160–171) and a July 1990 hearing before the BVA (R. at 215–25; Supp.R. at 1–14). At both hearings, the veteran described an incident during his Navy service when fellow service members struck him on the head with a metal pipe; at the BVA hearing the veteran further stated that he had been hit in the back with a rifle butt. R. at 163, 221; Supp.R. at 7. The Court holds that this testimony is cumulative of the information contained in the December 1983 VA Pain Clinic evaluation report (R. at 114–15) and thus not "new". *See Colvin, supra.* There is thus no new and material evidence on the basis of which the veteran's claim may be reopened, and any error committed in reopening or in the course of adjudicating that claim could, therefore, not have been "prejudicial" to the appellant. *See* 38 U.S.C.A. § 7261(b) (West 1991); *Shapiro v. Derwinski,* 2 Vet.App. 477, 478 (1992); *Kehoskie v. Derwinski,* 2 Vet.App. 31, 34 (1991); *Godwin v. Derwinski,* 1 Vet.App. 419, 425 (1991); *Thompson v. Derwinski,* 1 Vet.App. 251, 254 (1991); *McGinnis v. Brown,* 4 Vet.App. 239 (1993) (Steinberg, J., concurring in part and dissenting in part). Accordingly, the Board's decision will be affirmed.

Upon consideration of the record, the appellant's informal brief, and the Secretary's motion, the Court holds that the appellant has not demonstrated that the BVA committed error, in its findings of fact, conclusions of law, procedural processes, consideration of the benefit-of-the-doubt rule, or articulation of reasons or bases, that would warrant remand or reversal under 38 U.S.C.A. §§ 7261, 7252, 5107(a), (b), 7104(d)(1) (West 1991) and the analysis in *Gilbert v. Derwinski,* 1 Vet. App. 49 (1990). The Court grants the Secretary's motion for summary affirmance and summarily affirms the September 17, 1990, BVA decision.

AFFIRMED.