﻿Citation Nr: AXXXXXXXX
Decision Date: 09/30/19 Archive Date: 09/30/19

DOCKET NO. 190301-18214
DATE: September 30, 2019

REMANDED

Entitlement to service connection for sleep disturbances, to include as due to an undiagnosed illness or medically unexplained chronic multisymptom illness, is remanded.

Introduction

The Veteran served on active duty in the Air Force during the Gulf War Era and Peacetime, from March 1988 to March 1992, and from June 1992 to December 1992. 

This appeal comes before the Board from a February 2019 RAMP Rating Decision by the VA Regional Office (RO) in Waco, Texas.

REASONS FOR REMAND

The AMA provides that remands are warranted based on the VA’s duty to assist prior to the RO decision. Pub. L. No. 115-55, § 2(d)(2). Thus, the following claim is remanded based on the VA’s duty to assist prior to the RO’s February 2019 Rating Decision.

Entitlement to service connection for sleep disturbances, to include as due to an undiagnosed illness or medically unexplained chronic multisymptom illness, is remanded.

At the outset, the Board observes that the Veteran’s complete military personnel records (MPRs) and service treatment records (STRs) are not associated with the Veteran’s claims file. The VA made numerous requests for the Veteran’s STRs and, eventually, some of the STRs were obtained. However, the Board finds only one request for the Veteran’s MPRs in March 2011, and following a response indicating “no records” were available and suggesting the Defense Personnel Records Imaging Systems (DPRIS) be used to obtain the information from the Department of Defense, no further efforts to obtain this information appear in the claims file. While in December 2010, the VA apparently determined that all efforts to obtain the Veteran’s STRs had been exhausted and further efforts would be futile, there is no such determination regarding his MPRs. 

Furthermore, the Board notes that searches for the Veteran’s STRs and MPRs were only conducted through the Personnel Information Exchange System (PIES). According to the February 2019 Rating Decision, STRs and MPRs dated March 1988 through December 1992 were among the evidence considered; however, the Board is unable to verify the RO’s indication as accurate.

The Board is not reasonably certain that all of the Veteran’s STRs do not exist, or that further efforts to obtain them would be futile. Likewise, the Board is not reasonably certain that all of the Veteran’s MPRs do not exist, or that further efforts to obtain them would also be futile.

The Veteran suffers from the sleep disorders obstructive sleep apnea (OSA) and hypersomnia, including symptoms of narcolepsy and headaches according to Shreveport and Houston VAMC treatment records received prior to the RO’s February 2019 Rating Decision. Additionally, the Veteran has experienced difficulty sleeping at night according to Texarkana CBOC records also received pre-decision. 

The Veteran claims his sleep disorder(s) is related to his military service, as he was diagnosed with a sleep/work cycle disorder during service, and which he contends has persisted ever since. Also, he claims to have been exposed to pollutants while serving in the Persian Gulf. 

Because his DD Form 214s do not specifically indicate service in the theater of operations recognized for Gulf War Syndrome, his STRs and MPRs may be particularly beneficial in establishing critical information, such as his unit and dates of assignment, participation in combat operations, and official travel outside the United States. The Board observes that the Veteran was awarded the Southwest Asia Service Medal. The Southwest Asia Service Medal is potentially sufficient evidence of Southwest Asia service, but it was also available to individuals serving in countries that do not fall into the defined location (i.e., Israel, Egypt, Turkey, Syria, and Jordan). 

It is unclear from the evidence currently contained in the claims file whether the Veteran served in an area that would qualify as Southwest Asia service. As a result, on remand the RO should contact the National Archives and Records Administration (NARA), the Joint Services Records Research Center (JSRRC), or any other appropriate facility, to attempt to locate and associate with the Veteran’s claims file any missing STRs and MPRs.

The Veteran was diagnosed with OSA in May 2015. The Board notes that this condition is inextricably intertwined with the Veteran’s underlying symptoms of hyposomnia and narcolepsy. The Board requires a medical opinion as to whether the OSA is related to the Veteran’s Gulf War service, and if the Veteran’s signs or symptoms are manifestations of an undiagnosed illness or medically unexplained chronic multi-symptom illness for which headaches and sleep disturbances are recognized. 38 C.F.R. § 3.317(b).

To date, the Veteran has not been afforded a VA Gulf War Protocol examination to determine whether any of his symptoms are related either to known diagnoses, or to an undiagnosed or unexplained chronic multi-symptom illness. Thus, because the Veteran may be determined to have served in the requisite area in Southwest Asia, the Board finds that a Gulf War examination is required before the Veteran’s claim may be properly adjudicated. The Board requires a medical opinion addressing these assertions, as the Board is precluded from making its own medical conclusions. Colvin v. Derwinski, 1 Vet. App. 171 (1991).

The matter is REMANDED for the following action:

1. Obtain any outstanding records pertinent to the Veteran’s claim. The RO should contact the NARA, JSRRC, or any other appropriate facility to attempt to locate and associate with the Veteran’s claims file any missing STRs and MPRs.

2. Schedule the Veteran for a VA Gulf War General Medical Examination by an appropriate clinician to determine the nature and etiology of Veteran’s sleep disturbances and headaches. All pertinent evidence of record must be made available to and reviewed by the examiner. Any studies, tests, and evaluations deemed necessary should be performed. Based on a review of the evidence of record, lay statements, and examination results, the examiner should state an opinion with respect to whether the Veteran’s disorder at least as likely as not (a 50 percent probability or greater):

(a.) originated during his period of active service or is otherwise etiologically related to his active service, to include potential exposure to burning oil and gas wells; or

(b.) is an undiagnosed illness or medically unexplained chronic multisymptom illness and, if so, the examiner should state whether the disability:

(i.) results from a clear and distinct etiology,

(ii.) partially known etiology, or

(iii.) an unknown etiology.

For the purposes of these opinions, the examiner should note that the Veteran is competent to attest to factual matters of which he had first-hand knowledge, including events and symptoms. If there is a medical basis to support or doubt the history provided by the Veteran, the examiner should provide a fully reasoned explanation.

The examiner must provide a complete rationale for all proffered opinions. If the examiner cannot provide the required opinions without resorting to speculation, he or she shall provide a complete explanation as to why that is the case. Further, the examiner must state whether the inability to provide the required opinions is based on a personal limitation or on a lack of knowledge among the medical community at large. If the inability to provide a more definitive opinion is the result of a need for additional information, the examiner should identify the additional information that is needed.

3. Finally, undertake any other development determined to be warranted, and readjudicate the issues on appeal. 

 

T. REYNOLDS

Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board E. Worsham, Associate Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential, and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.