﻿Citation Nr: AXXXXXXXX
Decision Date: 03/31/20 Archive Date: 03/31/20

DOCKET NO. 190619-21480
DATE: March 31, 2020

ORDER

Entitlement to service connection for an acquired psychiatric disorder, to include unspecified depressive disorder and recurrent major depressive disorder, as secondary to herpes simplex type 2 (herpes), is granted.

FINDING OF FACT

The Veteran’s acquired psychiatric disorder is proximately due to herpes. 

CONCLUSION OF LAW

The criteria for service connection for an acquired psychiatric disorder, as secondary to herpes, are met. 38 U.S.C. §§ 1131, 5107; 38 C.F.R. §§ 3.102, 3.310.

REASONS AND BASES FOR FINDING AND CONCLUSION

On August 23, 2017, the President signed into law the Veterans Appeals Improvement and Modernization Act, Pub. L. No. 115-55, also known as the Appeals Modernization Act (AMA). This law creates a new framework for Veterans dissatisfied with the Department of Veterans Affairs (VA’s) decision on their claim to seek review. The Veteran chose to participate in VA’s test program RAMP, the Rapid Appeals Modernization Program. This decision has been written consistent with the new AMA framework.

The Veteran served on active duty in the United States Army from May 1986 to May 1989. 

An October 2016 rating decision denied service connection for stress. A February 2018 rating decision denied service connection for a mental health condition. In June 2018, the Veteran filed a timely Notice of Disagreement (NOD). In October 2018, the Veteran submitted a RAMP election form and selected the Supplemental Claim lane. 

The March 2019 RAMP rating decision considered the evidence of record, presumed the receipt of new and relevant evidence, and confirmed and continued the previous denial of service connection for unspecified depressive disorder as secondary to herpes. That decision noted that the claim had been previously rated as stress and as a mental health condition. 

In June 2019, the Veteran timely appealed the March 2019 RAMP rating decision to the Board of Veterans’ Appeals (Board) and selected the evidence submission docket.

Matters Not Before the Board

In April 2013, the agency of original jurisdiction (AOJ) denied service connection for bilateral pes planus, high blood pressure, and paroxysmal atrial fibrillation. In March 2014, the Veteran submitted a timely NOD as to these issues. The Veteran has reiterated that he is seeking compensation for these disabilities and the AOJ has explained that they are on appeal. See February 2016 VA Form 21-526EZ; September 2016 Correspondence. However, the appeal of these issues was not addressed by the March 2019 RAMP Rating Decision. The Veteran may notify the AOJ that the appeal of these issues is still pending.

In July 2016 and March 2017, the Veteran claimed service connection for plantar fasciitis. See July 2016 VA Form 21-526EZ; VA Form 21-526EZ Received March 31, 2017; see also December 2017 Report of General Information (reiterating that he wanted claim for plantar fasciitis considered). However, the AOJ has not adjudicated this claim. The appellant may resubmit a claim to the AOJ or notify the AOJ that the issue is still pending.

In January 2020, the AOJ issued a Statement of the Case (SOC) addressing entitlement to service connection for headaches, as secondary to tinnitus. The record before the Board does not reflect the receipt of a VA Form 9 or an election to opt into the AMA. Thus, the Board will not address this issue.

Secondary service connection for an acquired psychiatric disorder is granted.

The Veteran asserts that his depression is due to genital herpes. See, e.g., January 2018 VA Form 21-4138; June 2018 NOD; June 2019 Brief. The Board agrees. As the Veteran has only asserted entitlement to secondary service connection and as a full grant of that benefit is warranted, the Board will limit its discussion to this theory of entitlement.

Secondary service connection is warranted for a disability that is proximately due to or has been aggravated by a service-connected disability. 38 C.F.R. § 3.310. 

In February 2016, the Veteran claimed service connection for stress as secondary to herpes. See February 2016 VA Form 21-526EZ. A VA examiner noted no current herpes outbreak and a different VA examiner reported no current diagnosed mental disorder. See May 2016 VA Skin Examination Report; October 2016 VA Mental Disorders Examination Report. The Veteran subsequently reported that herpes had worsened, and a VA-contracted examiner noted his report that his outbreaks had become more severe, affecting his face, groin, penis, and anus, with flu-like symptoms and joint pain. See November 2017 Skin Examination Report.

In January 2018, the Veteran submitted a Mental Disorders Disability Benefits Questionnaire (DBQ) completed by Dr. C.M., Ph.D. Dr. C.M., a clinical psychologist, diagnosed the Veteran with major depressive disorder, recurrent, moderate and mild alcohol use disorder and opined that it is more likely than not that the Veteran’s major depressive disorder is caused by, secondary to, or related to genital herpes. He explained that the Veteran’s diagnosis with genital herpes has negatively affected his mood, motivation, and self-esteem, caused feelings of self-inadequacy, and diminished his desire to be around others. Dr. C.M. noted that the Veteran had recurrent thoughts about herpes, including concern that he will pass it on to others and worry about pain that he associates with herpes. See January 2018 DBQ and Medical Opinion.

A February 2018 rating decision denied service connection for a mental health condition and explained that “in accordance with VA regulations, a telehealth or telemental health examination report is only acceptable and actionable for rating purposes when prepared by a [VA or VA-contracted] examiner… [t]herefore, the evidence contained therein will have no merit on this claim.” See also March 2019 RAMP Rating Decision at 3.

The Veteran submitted a supplemental medical opinion by Dr. R.J.R., Ph.D., a psychologist. Dr. R.J.R. explained that telehealth is an acceptable form of assessment for mental health and pointed out that VA uses this process. He explained that he reviewed the DBQ completed by Dr. C.M. and stated that Dr. C.M. was able to adequately and clearly visualize the veteran and thus was able to base his diagnosis and opinion on the Veteran’s body language and spoken voice. Dr. R.J.R. stated that a decision to wholly discount the probative value of Dr. C.M.’s report and opinion solely because the Veteran was examined by video would be “erroneous.” Additionally, Dr. R.J.R reviewed Dr. C.M.’s medical opinion and rationale and stated that Dr. C.M.’s positive nexus opinion is corroborated by the current version of the Diagnostic and Statistical Manual, which states that the clinician’s best judgment is the essence of the determining the etiology of a depressive disorder. See May 2018 Dr. R.J.R. Opinion. The Veteran subsequently submitted Dr. R.J.R.’s qualifications, including certificates of completion for continuing education courses related to VA disability examinations. See June 2019 Correspondence.

In February 2019, the Veteran presented for an examination with a VA-contracted psychologist, who diagnosed the Veteran with unspecified depressive disorder. The examiner noted that objective testing revealed that the Veteran provided answers consistent with mildly elevated depression and that he was cooperative and appeared sincere. He noted that the Veteran’s VA treatment records included a diagnosis of unspecified depressive disorder and that session notes indicated that he presented as anxious, with symptoms of insomnia and depression, and that he had undergone multiple surgeries for atrial fibrillation and believed that he and his spouse were incompatible. See February 2019 Mental Disorders DBQ.

Notably, the examiner stated that of record was a “fake [Compensation & Pension] exam report by Dr. [C.M., who] is not a VA contractor and does not work for any recognized VA contractors. His reports are paid for by the Veterans and are not objective. In the experience of this examiner, Dr. [C.M.] always finds a diagnosable mental health disorder and always states that the disorder results in severe and significant impairment based on little to no evidence. These fake [Compensation & Pension] reports by Dr. [C.M.] are not considered valid by this examiner.” See id. He opined that the Veteran’s depression was less likely than not due to genital herpes and explained that his symptoms were mild and vague, with noted stressors such as family issues and atrial fibrillation, and that he had no documented mental health treatment between his 1989 discharge from service and 2017. See February 2019 Medical Opinion.

Initially, the Board notes that no regulation requires or permits the Board to wholly discount a report of a private mental health examination that was conducted by video. Critically, while VA’s adjudication procedures manual may prescribe such a requirement, the rules in the manual have not been subject to the notice-and-comment process that accompanies an amendment to the legally-binding Code of Federal Regulations. See Haas v. Peake, 525 F.3d 1168, 1196 (Fed. Cir. 2008) (“the Manual M-21-1 is an internal manual used to convey guidance to VA adjudicators. It is not intended to establish substantive rules beyond those contained in statute and regulation”) (internal quotation marks omitted), overruled on other grounds by Procopio v. Wilkie, 913 F.3d 1371 (Fed. Cir. 2019). Simply put, the AOJ’s determination that this evidence per se has “no merit” has no merit.

Turning to the probative evidence, the record does not demonstrate that Dr. C.M.’s evaluation was compromised by nature of being conducted by video link or as a result of any other relevant factor. Dr. C.M. is a clinical psychologist and is competent to diagnose and opine as to the etiology of the Veteran’s mental disorder, and Dr. R.J.R. explained that Dr. C.M.’s methodology was not unsound. Furthermore, Dr. R.J.R. emphasized that Dr. C.M. was able to appreciate the nonverbal cues and mannerisms displayed by the Veteran and that where there is no need to physically touch a veteran, such as during a mental health examination, a video examination should be considered of equal value to an in-person examination. See Dr. R.J.R. Opinion at 2. Indeed, the Board takes notice that VA examiners regularly submit reports based upon video consultations or even reports based entirely upon a review of the evidence in a claims file. Additionally, the Board emphasizes that the February 2019 VA-contracted examiner was not averse to critiquing those methods of Dr. C.M. with which he disagreed, yet he did not object to his having interviewed the Veteran by video. Here, there is no competent medical evidence of record that a mental health examination is less probative if conducted by video, and the Board will not substitute its own medical judgment for that of Drs. C.M. and R.J.R. as to what methods of examination are appropriate. See Colvin v. Derwinksi, 1 Vet. App. 171 (1991).

Moreover, while the February 2019 VA-contracted examiner offered his unsolicited opinion that Dr. C.M.’s report was “not objective” because his reports are “paid for by the Veterans,” the record does not demonstrate that the February 2019 VA-contracted examiner provided his services pro bono. Indeed, the Board has carefully reviewed the record and confides that none of the medical evidence in this matter was generated by volunteer examiners. The Board is cognizant of the practical difficulties that would arise in this appeal were it to exclude evidence solely because the examiner was paid a fee for his or her services. See Colvin, supra. It will not do so.

Notwithstanding the February 2019 examiner’s objections to Dr. C.M.’s methods, he diagnosed current unspecified depressive disorder, while Dr. C.M. diagnosed moderate recurrent major depressive disorder. Thus, the examiners are in accord that the Veteran has a current mental disorder manifested by depressive symptoms. Additionally, while the issue of severity is not currently before the Board, the symptoms documented in Dr. C.M.’s report are corroborated by the Veteran’s VA mental health treatment records. Indeed, the Veteran’s VA mental health provider noted many of the same symptoms that Dr. C.M. reported and that the February 2019 examiner failed to report. See, e.g., June 8, 2018 Mental Health Treatment Note (symptoms include depressed mood, loss of interest in things, insomnia, daily fatigue, feeling overwhelmed, and social withdrawal, and noted that he is being treated for stress and anxiety). 

With respect to the etiology of the Veteran’s mental disorder, Dr. C.M. attributed the Veteran’s depression to his genital herpes and explained that his mood and interpersonal functioning were impaired by his concern about his disease. This rationale is readily comprehensible and is supported by the documented symptomatology. Indeed, this etiological relationship is corroborated by other VA and VA-contracted examination reports. In this regard, while the October 2016 examiner did not diagnose a mental health disorder, the evidence shows that herpes was under control during that examination. See May 2016 Skin Examination Report; October 2016 Mental Health Examination Report. The Veteran subsequently had an outbreak of herpes symptoms, followed by his diagnosis of a depressive disorder. See November 2017 Skin Examination Report; January 2018 Mental Disorders DBQ. This timeline is consistent with Dr. C.M.’s attribution of the Veteran’s depression to his genital herpes. 

In contrast, the February 2019 examiner focused his discussion on the lack of a mental health diagnosis or symptoms in the Veteran’s service records, as well as an absence of evidence of mental health treatment in the decades following service. The Board cannot determine, and the examiner did not explain, why the Veteran would be expected to have depressive symptoms in service related to a herpes outbreak in 2017. Indeed, the examiner noted that VA mental health treatment notes show that the Veteran attributed his mood symptoms to family issues and atrial fibrillation. The Board observes that Dr. C.M. explained that genital herpes caused the Veteran interpersonal problems as a result of feelings of inadequacy and concern over spreading the disease to others, and this explanation is consistent with the February 2019 examiner’s attribution of mood symptoms to family issues.

The Board emphasizes that while the February 2019 examiner lodged numerous criticisms against Dr. C.M., these are general objections that, when applied to the facts of this case, are inapposite and unsubstantiated by the record. While the February 2019 examiner objected that Dr. C.M. “always made a diagnosis,” he likewise diagnosed the Veteran with a depressive disorder. While he objected that Dr. C.M. “always states that the disorder results in severe and significant impairment based on little to no evidence,” other VA mental health professionals described symptoms that corroborated Dr. C.M.’s report. Critically, the February 2019 examiner did not explain how or if he had determined that the perceived discrepancy in Dr. C.M.’s methods was not due to an innocent cause, such as veterans simply electing not to submit negative reports produced by Dr. C.M. that would weigh against their claims. In any event, the Board will not discard Dr. C.M.’s report based wholly upon the February 2019 examiner’s uncorroborated assertions, especially as binding regulations that have been subject to notice-and-comment require the Board to afford the Veteran the benefit of the doubt and account for the possibility that different examiners, at different times, will not describe the same disability in the same language. See 38 C.F.R. §§ 3.102, 4.2. Indeed, the February 2019 examiner focused his criticism on the issue of severity, which is not presently before the Board; he did not criticize Dr. C.M.’s objectivity in offering an etiological opinion, and his own opinion was largely inapposite to the Veteran’s assertions and was consistent with Dr. C.M.’s rationale. 

Here, there is no dispute that Dr. C.M. is competent to offer a medical opinion. His rationale is thorough, comprehensible, and is corroborated by other evidence of record. There is no persuasive evidence of record before the Board that impugns his credibility or objectivity. His opinion is the most probative evidence of record as to the etiology of the Veteran’s depression, and thus, as the probative evidence of record weighs in favor of the Veteran’s claim, the appeal is granted.

 

 

S. BUSH

Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board D.M. Badaczewski, Associate Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.