Citation Nr: 1045620 
Decision Date: 12/06/10 Archive Date: 12/14/10

DOCKET NO. 05-34 253 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in St. Petersburg, 
Florida (RO)

THE ISSUES

1. Entitlement to an initial evaluation greater than 10 percent 
for residuals of cold injury of the right foot.

2. Entitlement to an initial evaluation greater than 10 percent 
for residuals of cold injury of the left foot prior to July 14, 
2004.

3. Entitlement to an initial evaluation greater than 20 percent 
for residuals of cold injury of the left foot from July 14, 2004.

REPRESENTATION

Appellant represented by: Disabled American Veterans

WITNESS AT HEARING ON APPEAL

The Veteran

ATTORNEY FOR THE BOARD

Bernard T. DoMinh, Counsel

INTRODUCTION

The Veteran had verified active service from February 1951 to 
November 1952. His service records show that he served in the 
Republic of Korea during the Korean Conflict and that he was 
decorated with the Combat Infantryman Badge.

This matter comes to the Board of Veterans' Appeals (Board) on 
appeal from an August 2003 rating decision by a Department of 
Veterans Affairs (VA) Regional Office, which granted the Veteran 
service connection for cold injury residuals of the left and 
right foot and assigned a 10 percent rating to each foot, 
effective December 17, 2002. During the course of the appeal, an 
October 2004 rating decision increased the rating assigned for 
cold injury residuals of the left foot to 20 percent, effective 
July 14, 2004. In adjudicating this appeal, the Board must 
consider whether the case warrants the assignment of additional 
separate ratings for the service-connected cold injury residuals 
for each foot for separate periods of time, from December 17, 
2002, to the present, based on the facts found, a practice known 
as "staged" ratings. See Fenderson v. West, 12 Vet. App. 119 
(1999).

During the course of the appeal, the case was remanded to the RO 
by the Board for additional evidentiary and procedural 
development in January 2008, October 2009, and August 2010. The 
present ratings assigned to the cold injury residuals of each 
foot were confirmed by the RO, most recently in a September 2010 
supplemental statement of the case/rating decision. Thereafter, 
the case was returned to the Board in October 2010 and the 
Veteran now continues his appeal.

The Veteran appeared at the RO to present oral testimony and 
evidence in support of his appeal in a May 2006 hearing before a 
Decision Review Officer and an April 2010 hearing before the 
undersigned traveling Veterans Law Judge. The Board notes that 
the transcripts of these hearings have been obtained and 
associated with the Veteran's claims file for the Board's 
consideration.

Please note this appeal has been advanced on the Board's docket 
pursuant to 38 U.S.C.A. § 7107(a)(2) (West 2002); 38 C.F.R. 
§ 20.900(c) (2010).

FINDINGS OF FACT

1. For the period from December 17, 2002 to March 8, 2010, 
residuals of cold injury of the right foot are manifested by 
subjective complaints of foot pain, numbness, and cold 
sensitivity, with no clinical evidence of related neurological, 
vascular, or dermatological impairment, which produce no more 
than moderate disability.

2. For the period from March 9, 2010, residuals of cold injury 
of the right foot are manifested by radiographic evidence of 
marked degenerative changes, sclerosis, and narrowing of the 
first metatarsophalangial joint, with subjective complaints of 
foot pain, numbness, and cold sensitivity, with no clinical 
evidence of related neurological, vascular, or dermatological 
impairment, which produce no more than moderately severe 
disability.

3. For the period from December 17, 2002 to July 13, 2004, 
residuals of cold injury of the left foot are manifested by 
subjective complaints of foot pain, numbness, and cold 
sensitivity, with no clinical evidence of related neurological, 
vascular, or dermatological impairment, which produce no more 
than moderate disability.

4. For the period from July 14, 2004, residuals of cold injury 
of the left foot are manifested by subjective complaints of foot 
pain, numbness, and cold sensitivity, with no clinical evidence 
of related neurological, vascular, or dermatological impairment, 
with radiographic evidence of minimal degenerative changes of the 
small joints, which produce no more than moderately severe 
disability.

CONCLUSIONS OF LAW

1. The criteria for an initial evaluation greater than 10 
percent for residuals of cold injury of the right foot prior to 
March 9, 2010, have not been met. 38 U.S.C.A. § 1155 (West 
2002); 38 C.F.R. §§ 4.71a, 4.104, Diagnostic Code 5284-7122 
(2010). 

2. The criteria for a 20 percent initial evaluation for 
residuals of a cold injury of the right foot from March 9, 2010, 
have been met. 38 U.S.C.A. §§ 1155, 5107(b) (West 2002); 38 
C.F.R. §§ 4.3, 4.7, 4.71a, 4.104, Diagnostic Code 5284-7122 
(2010). 

3. The criteria for an initial evaluation greater than 10 
percent for residuals of cold injury of the left foot prior to 
July 14, 2004 have not been met. 38 U.S.C.A. § 1155 (West 2002); 
38 C.F.R. §§ 4.71a, 4.104, Diagnostic Code 5284-7122 (2010). 

4. The criteria for an initial evaluation greater than 20 
percent for residuals of cold injury of the left foot from July 
14, 2004 have not been met. 38 U.S.C.A. § 1155 (West 2002); 38 
C.F.R. §§ 4.71a, 4.104, Diagnostic Code 5284-7122 (2010).

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Duty to notify and assist

The Board notes at the outset that, in accordance with the 
Veterans Claims Assistance Act of 2000 (VCAA), VA has an 
obligation to notify claimants what information or evidence is 
needed in order to substantiate a claim, as well as a duty to 
assist claimants by making reasonable efforts to get the evidence 
needed. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A and 5107 (West 
2002); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a) (2010); see 
also Quartuccio v. Principi, 16 Vet. App. 183, 187 (2002).

Initially, the Board notes that the issues now on appeal all flow 
downstream from an August 2003 rating decision, which initially 
established service connection for residuals of cold injury of 
the left and right foot, effective from December 17, 2002, with 
initial compensable ratings assigned to each. The United States 
Court of Appeals for Veterans Claims (Court) held in 
Dingess/Hartman v. Nicholson, 19 Vet. App. 473, 490- 91 (2006), 
that in cases where service connection has been granted and an 
initial disability rating and effective date have been assigned, 
the typical service-connection claim has been more than 
substantiated, it has been proven, thereby rendering section 
5103(a) notice no longer required because the purpose that the 
notice is intended to serve has been fulfilled. Thus, because 
the notice that was provided before service connection was 
granted was legally sufficient, VA's duty to notify in this case 
is satisfied. See also Dunlap v. Nicholson, 21 Vet. App. 112 
(2007); Goodwin v. Peake, 22 Vet. App. 128 (2008).

In addition, the duty to assist the Veteran has been satisfied in 
this case. All relevant records are in the Veteran's claims file 
and were reviewed by both the RO and the Board in connection with 
his claims. Nothing in the record indicates the Veteran has 
identified the existence of any relevant evidence that is not of 
record. He has had the opportunity to present evidence and 
argument in support of his claim. Further, he was provided with 
VA medical examinations in August 2003, August 2004, and June 
2006. The Board notes that the aforementioned examination 
reports are adequate for adjudication purposes in that they each 
discuss in sufficient detail the medical state of the Veteran's 
bilateral foot disability due to cold injury in the context of 
his relevant clinical history, and that all findings and 
conclusions presented by the examiners are accompanied by a 
detailed supportive rationale. See Barr v. Nicholson, 21 Vet. 
App. 303 (2009). All private and VA medical records pertinent to 
the Veteran's treatment for his bilateral residuals of cold 
injuries to his feet for the time period encompassed by this 
decision's adjudication on the merits (i.e., from December 17, 
2002 to the present) have been duly obtained and associated with 
the claims file and the evidence in this regard appears complete. 
In this regard, the Board notes that current treatment records up 
to March 2010 have been obtained and associated with the 
Veteran's claims file, and that furthermore the Veteran had 
affirmed in an October 2010 written statement that there was no 
additional evidence to submit. Although the Board is aware that 
the Veteran has reported in correspondence dated October 2010 
that his sources of income included Social Security 
Administration (SSA) benefits, it is evident from the record that 
the Veteran, who is over 80 years old, is currently drawing these 
benefits due to retirement and not on account of disability. 
Thus, in view of the considerable evidentiary development that 
has already been undertaken during the course of this appeal, the 
Board finds that the duty to assist has been satisfied in this 
case.

The Board notes that it has thoroughly reviewed the record in 
conjunction with this case. Although the Board has an obligation 
to provide reasons and bases supporting this decision, there is 
no need to discuss, in detail, the extensive evidence submitted 
by the appellant or on his behalf. See Gonzales v. West, 218 
F.3d 1378, 1380-81 (Fed. Cir. 2000) (the Board must review the 
entire record, but does not have to discuss each piece of 
evidence). Rather, the Board's analysis below will focus 
specifically on what the evidence shows, or fails to show, on the 
claims. See Timberlake v. Gober, 14 Vet. App. 122, 129 (2000) 
(noting that the Board must analyze the credibility and probative 
value of the evidence, account for the evidence which it finds to 
be persuasive or unpersuasive, and provide the reasons for its 
rejection of any material evidence favorable to the claimant).

When there is an approximate balance of positive and negative 
evidence regarding any issue material to the determination of a 
matter, the benefit of the doubt shall be given to the claimant. 
38 U.S.C.A. § 5107(b) (West 2002). When a reasonable doubt 
arises regarding service origin, such doubt will be resolved in 
favor of the claimant. Reasonable doubt is doubt which exists 
because of an approximate balance of positive and negative 
evidence which does not satisfactorily prove or disprove the 
claim. 38 C.F.R. §§ 3.102, 4.3 (2010). The question is whether 
the evidence supports the claim or is in relative equipoise, with 
the claimant prevailing in either event, or whether a fair 
preponderance of the evidence is against the claim, in which 
event the claim must be denied. See Gilbert v. Derwinski, 1 Vet. 
App. 49, 54 (1990).

In this, and in other cases, only independent medical evidence 
may be considered to support medical findings. The Board is not 
free to substitute its own judgment for that of such an expert. 
See Colvin v. Derwinski, 1 Vet. App. 171, 175 (1991). Here, 
nothing on file shows that the Veteran has the requisite 
knowledge, skill, experience, training, or education to render a 
medical opinion. See Espiritu v. Derwinski, 2 Vet. App. 492, 494 
(1992). Consequently, his contentions alone cannot constitute 
competent medical evidence. 38 C.F.R. § 3.159(a)(1) (2010).

Increased ratings

Disability evaluations are determined by the application of a 
schedule of ratings, which is based on average impairment of 
earning capacity. 38 U.S.C.A. § 1155; 38 C.F.R. Part 4. 
Separate diagnostic codes identify the various disabilities. An 
evaluation of the level of disability present also includes 
consideration of the functional impairment of the Veteran's 
ability to engage in ordinary activities, including employment. 
38 C.F.R. § 4.10 (2010). Where there is a reasonable doubt as to 
the degree of disability, such doubt will be resolved in favor of 
the claimant. 38 C.F.R. §§ 3.102, 4.3. Where there is a 
question as to which of two evaluations shall be applied, the 
higher evaluation will be assigned if the disability picture more 
nearly approximates the criteria required for that rating. 
Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7 
(2010). The use of manifestations not resulting from service-
connected disease or injury in establishing the service-connected 
evaluation and the evaluation of the same manifestation under 
different diagnoses are to be avoided. 38 C.F.R. § 4.14 (2010). 
When an unlisted condition is encountered it will be permissible 
to rate under a closely related disease or injury in which not 
only the functions affected, but the anatomical localization and 
symptomatology are closely analogous. 38 C.F.R. § 4.20 (2010). 
In view of the number of atypical instances it is not expected, 
especially with the more fully described grades of disabilities, 
that all cases will show all the findings specified. 38 C.F.R. § 
4.21 (2010). In addition, the Board will consider the potential 
application of the various other provisions of 38 C.F.R., Parts 3 
and 4, whether or not they were raised by the Veteran, as 
required by Schafrath v. Derwinski, 1 Vet. App. 589 (1991).

The Veteran's service-connected bilateral foot disabilities are 
rated under the criteria for evaluating foot injuries under 38 
C.F.R. § 4.71a, Diagnostic Code 5284, or cold weather injury 
residuals under 38 C.F.R. § 4.104, Diagnostic Code 7122. 

38 C.F.R. § 4.71a, Diagnostic Code 5284, provides for the 
assignment of a 10 percent evaluation for foot injury residuals 
that are productive of moderate impairment. Assignment of a 20 
percent evaluation is warranted for foot injury residuals that 
are productive of moderately severe impairment. Assignment of a 
30 percent evaluation is warranted for foot injury residuals that 
are productive of severe impairment. Assignment of a 40 percent 
evaluation is warranted only for actual loss of use of the 
disabled foot.

38 C.F.R. § 4.104, Diagnostic Code 7122, provides for the 
assignment of a 10 percent evaluation for cold injury residuals 
manifested by arthralgia or other pain, numbness, or cold 
sensitivity. Assignment of a 20 percent evaluation is warranted 
for cold injury residuals manifested by arthralgia or other pain, 
numbness, or cold sensitivity plus tissue loss, nail 
abnormalities, color changes, locally impaired sensation, 
hyperhidrosis, or X-ray abnormalities (osteoporosis, subarticular 
punched out lesions, or osteoarthritis). Assignment of a 30 
percent evaluation is warranted for cold injury residuals 
manifested by arthralgia or other pain, numbness, or cold 
sensitivity plus two or more of the following: tissue loss, nail 
abnormalities, color changes, locally impaired sensation, 
hyperhidrosis, or X-ray abnormalities (osteoporosis, subarticular 
punched out lesions, or osteoarthritis). 

NOTE (1): Separately evaluate amputations of fingers or toes, and 
complications such as squamous cell carcinoma at the site of a 
cold injury scar or peripheral neuropathy, under other Diagnostic 
Codes. Separately evaluate other disabilities that have been 
diagnosed as the residual effects of cold injury, such as 
Raynaud's phenomenon, muscle atrophy, etc., unless they are used 
to support an evaluation under Diagnostic Code 7122.

NOTE (2): Evaluate each affected part (e.g., hand, foot, ear, 
nose) separately and combine the ratings in accordance with 38 
C.F.R. §§ 4.25 and 4.26 (2010).

Pertinent factual background

As relevant, the evidence pertinent to the period from December 
17, 2002, to the present, which includes private and VA clinical 
records and the Veteran's written statements and oral testimony 
presented at hearings in May 2006 and April 2010, shows that the 
Veteran's service-connected residuals of cold injury of his right 
foot are manifested by subjective complaints of hyperhidrosis, 
pain, numbness and tingling sensations, sensitivity to pressure, 
and hypersensitivity to cold weather, even during the summer 
months. The Veteran attributes difficulties with ambulation and 
walking distances of more than several blocks, including problems 
with maintaining balance on his feet, to numbness and loss of 
sensation. 

A VA treatment note dated July 13, 2002, shows that the Veteran 
presented complaints of bilateral foot pain with skin 
discoloration, left perceived to be worse than right, with 
sensitivity to cold and intermittent numbness, which he treated 
with non-prescription pain medications which only provided 
occasional relief.

VA examination of the Veteran's feet in August 2003 and August 
2004 revealed dry skin, no ulcers, no edema, no skin 
discoloration, and normal arterial pulses and vascular 
circulation. Hair growth was normal and toenails were clinically 
normal, with no deformity or atrophy, and no scars were observed. 
Neurological examination revealed normal touch, position, and 
vibration sense, with normal reflexes, range of motion, and motor 
strength, and no muscle atrophy or weakness. All toes were 
intact. 

Although a notation of peripheral neuropathy of the Veteran's 
feet from frostbite was noted on a private treatment note dated 
in April 2006, a June 2006 VA examination shows normal clinical 
findings of his feet that mirror the findings obtained on 
previous examinations in August 2003 and August 2004, and normal 
neurological findings that caused the examiner to characterized 
the Veteran's reported hypoesthesia as being questionable. The 
Veteran displayed a normal gait. Varicosities of his veins were 
noted on his calves of approximate onset seven years earlier, 
with associated spider veins appearing on his ankles, but these 
were not clinically linked by the examiner to the Veteran's 
history of frostbite. The examiner presented the following 
commentary:

(The Veteran) does have history of frostbite in the 
past. Other than he is complaining of pain in the 
feet, I do not see any overt sign of ischemia in the 
feet. He says that his feet always feel cold, but 
when I palpated his feet, they are actually warm. 
Both arteries of both feet are well felt. He has no 
evidence for any gangrene. No hyperhidrosis either 
and no nail changes. I am not really convinced 
whether his pain in his feet is really even due to 
frostbite as I do not see any clear evidence of any 
ischemia. His skin elasticity is fine. There is no 
tight skin. . . (consistent with) patients with 
frostbite. 

The June 2006 VA examiner went on to relate the Veteran's 
subjective leg pain, skin discoloration in the left leg, and 
edema to varicose veins of the right and left leg, left worse 
than right, with evidence of development of early phlebitic 
syndrome, but the examiner did not find these to be related to 
the Veteran's history of frostbite.

An April 2007 VA outpatient treatment report shows that the 
Veteran complained of bilateral foot pain with skin changes, 
coldness of the feet even during summer months, and unsteadiness 
on standing and walking that he attributed to his history of 
frostbite. The assessment with history of frostbite. The 
examination also noted varicose veins with associated skin 
changes affecting his lower extremities, left worse than right, 
but did not present any opinion relating them to frostbite. 

Private medical treatment reports dated in March 2008 and April 
2008 from the Veteran's treating physician, Margaret Chang, M.D., 
show that the Veteran presented with complaints of bilateral foot 
pain with numbness and a pins-and-needles sensation, which he 
related to his history of frostbite. Sensory examination 
revealed diminished pin prick sensation to the distal third of 
his feet, bilaterally. His gait and stance were normal. The 
impression was sensory peripheral neuropathy and history of 
bilateral frostbite of the feet. In a September 2009 statement, 
Dr. Chang reported that the Veteran "had frostbite on both legs 
and feet. This has discolored skin and toenails."

VA treatment notes dated in March 2008, January 2009 and 
September 2009 show that the Veteran reported having bilateral 
foot pain whose frequency would occur off and on. The prescribed 
treatment plan was to administer a minimal amount of non-
prescription acetaminophen, if needed.

VA electromyographic and nerve conduction studies performed in 
September 2009 and October 2009 to address the Veteran's previous 
bilateral foot complaints revealed, in pertinent part, that all 
nerve conduction studies were within normal limits and that there 
was no electrophysiological evidence of focal or diffuse 
peripheral neuropathy involving the Veteran's lower extremities, 
although a small fiber sensory neuropathy could not be ruled out 
using standard nerve conduction study techniques. 

A January 2010 VA treatment report shows that the Veteran 
complained of bilateral foot pain that he related to his history 
of frostbite during Korean War service, which caused him 
discomfort when walking or playing golf. The report referenced 
electromyographic and nerve conduction studies conducted several 
months earlier that revealed no evidence of focal or diffuse 
peripheral neuropathy, although it suggested a small fiber 
sensory neuropathy. Otherwise, examination of his feet in 
January 2010 was normal on neurological assessment, with no 
evidence of edema or circulatory abnormalities of his ankles and 
feet, bilaterally. 

X-rays conducted by VA of the Veteran's feet on March 9, 2010, 
revealed marked degenerative changes of the first metatarsal 
phalangeal joint of the right foot and minimal degenerative 
changes of the small joints, but with unremarkable soft tissues 
and no soft tissue swelling or calcifications, no stress 
fracture, no calcaneal spur, no arterial vascular calcification, 
and no hallux valgus deformity. X-ray of the left foot revealed 
minimal degenerative changes of the small joints of the left foot 
with otherwise normal findings and no stress fracture, no 
calcaneal spur, and no arterial vascular calcifications detected.

(a.) Entitlement to an initial evaluation greater than 10 
percent for residuals of cold injury of the right foot; an 
initial evaluation greater than 10 percent for residuals of cold 
injury of the left foot prior to July 14, 2004; and an initial 
evaluation greater than 20 percent for residuals of cold injury 
of the left foot from July 14, 2004.

The Board has considered the pertinent clinical and testimonial 
evidence discussed above, and finds that notwithstanding the 
Veteran's subjective complaints of bilateral foot pain, numbness, 
and cold sensitivity, the objective medical evidence does not 
demonstrate that his residuals of cold injury for his right foot 
warrant the assignment of an initial evaluation greater than 10 
percent prior to March 9, 2010, although the radiographic 
evidence of severe arthritic changes of the first 
metatarsophalangial joint of his right foot on X-ray examination 
on March 9, 2010, is sufficient to allow a rating increase to 20 
percent (and no higher) as of this date. The evidence, however, 
does not demonstrate that residuals of a cold injury of the left 
foot warrant an initial evaluation greater than 10 percent prior 
to July 14, 2004, or an evaluation greater than 20 percent from 
July 14, 2004, onwards. 

The evidence pertaining to the Veteran's feet for the period 
prior to March 9, 2010, shows that, notwithstanding the 2008 
treatment notes and September 2009 statement of Dr. Chang, in 
which the physician found evidence of sensory peripheral 
neuropathy and discolored skin and toenails, the VA clinical 
records dated prior to and after Dr. Chang's notes and statement 
fail to corroborate her findings of skin and toenail 
discoloration of the Veteran's feet or actual neurological 
impairment attributable to his history of frostbite. The VA 
examinations of the Veteran's feet consistently show normal skin 
and skin color and normal toenails, and the electromyographic and 
nerve conduction studies conducted in 2009 conclusively 
demonstrated no evidence of focal or diffuse peripheral 
neuropathy. Although the neurological studies could not rule out 
a small fiber sensory neuropathy, this finding in and of itself 
does not conclusively mean that a small fiber sensory neuropathy 
is present, and in any case the VA studies do not present any 
opinion attributing it to the Veteran's history of frostbite 
injury.

Ultimately, the Veteran's bilateral cold injury residuals of his 
feet are manifested by his subjective complaints of pain, 
numbness, and cold sensitivity, but the overall disability 
picture collectively presented by the clinical evidence does not 
objectively demonstrate that the Veteran's bilateral cold injury 
residuals of his feet are manifested by tissue loss, nail 
abnormalities, color changes, locally impaired sensation, or 
hyperhidrosis, or X-ray abnormalities (osteoporosis, subarticular 
punched out lesions, or osteoarthritis) until March 9, 2010.

As of March 9, 2010, X-rays conducted by VA reveal the presence 
of marked degenerative changes, sclerosis, and narrowing of the 
first metatarsophalangeal joint of the Veteran's right foot, and 
minimal degenerative changes of the small joints of the left 
foot. Although the clinical evidence does not indicate whether 
or not these arthritic changes noted on X-ray are attributable to 
the Veteran's history of cold injury, the Board will afford the 
Veteran the benefit of the doubt and consider them to be 
associated with his service-connected disability. 
38 U.S.C.A. § 5107(b); 38 C.F.R. § 4.3; Gilbert v. Derwinski, 1 
Vet. App. 49 (1990). 

As the Veteran's arthritis of his right first metatarsophalangeal 
joint (with sclerosis and joint narrowing) is first noted on X-
ray taken on March 9, 2010, and clinically characterized as 
marked by the reviewing radiologist, this objective finding, when 
considered along with the Veteran's subjective symptomatic 
complaints, present a disability picture that more closely 
approximate the criteria for a 20 percent evaluation on the basis 
of arthralgia or other pain, numbness, and cold sensitivity plus 
X-ray abnormalities (osteoarthritis) under 38 C.F.R. § 4.104, 
Diagnostic Code 7122, such that a rating increase to this level 
is warranted under 38 C.F.R. § 4.7 as of March 9, 2010. 
Alternatively, the Veteran's right foot impairment may also be 
characterized as being moderately severe on the basis of marked 
arthritic changes and subjective complaints of pain and cold 
sensitivity, thereby also meeting the criteria for a 20 percent 
evaluation under 38 C.F.R. § 4.71a, Diagnostic Code 5284. 
However, the Board does not find that the evidence demonstrates a 
level of impairment associated with cold injury residuals of the 
right foot that meets the criteria for an evaluation above 20 
percent under either Diagnostic Code 5284 or 7122. The level of 
impairment does not more closely approximate the criteria for 
severe impairment under Diagnostic Code 5284, as a March 2008 VA 
outpatient note reflects that the Veteran's foot pain was deemed 
to warrant no more than the minimal amount of non-prescription 
acetaminophen, as needed, for treatment. Furthermore, a January 
2010 VA treatment report reflects that the Veteran reported being 
able to play golf despite his foot complaints, thus indicating no 
more than moderately severe impairment. Lastly, the evidence 
does not objectively demonstrate the actual presence of tissue 
loss, nail abnormalities, color changes, locally impaired 
sensation, or hyperhidrosis that has been clinically attributed 
to his history of cold injury of the right foot, in addition to 
his arthritic changes and subjective complaints of pain and 
sensitivity to cold that has been currently demonstrated, such 
that a 30 percent evaluation under Diagnostic Code 7122 may be 
assigned to his right foot.

With regard to the Veteran's cold injuries of his left foot, 
applying the criteria of Diagnostic Code 5284, the Board finds 
that the clinical evidence noting only the Veteran's ongoing 
subjective complaints of bilateral foot pain, numbness, and cold 
sensitivity, in the absence of any definitive clinical evidence 
of additional vascular, dermatological, or neurologic impairment 
attributable to frostbite injury, does not present a disability 
picture indicative of more than moderate impairment of this foot, 
which only warrants the assignment of a 10 percent evaluation. 
In this regard, although the Veteran complains of impaired use of 
his left foot due to his subjective complaints, the Board notes 
that a January 2010 VA treatment report reflects that the Veteran 
complained of discomfort when playing golf, thereby indicating by 
his evident ability to participate in a physical sport that is 
played in the upright and standing position, that his left foot 
disability is not productive of more than moderate impairment. 
Nevertheless, the Board will not disturb the RO's award of a 20 
percent evaluation for the Veteran's left foot cold injury 
residuals, effective July 14, 2004. The Board has considered the 
March 2010 X-ray finding of minimal degenerative changes of the 
small joints of the left foot, but does not find that the 
presence of such minimal arthritic changes provides a basis to 
allow for the assignment of an evaluation greater than 20 
percent. A VA March 2008 outpatient note reflects that the 
Veteran's foot pain was deemed to warrant no more than the 
minimal amount of non-prescription acetaminophen, as needed, for 
treatment. The evidence does not otherwise objectively 
demonstrate that the minimal degenerative changes affecting his 
left foot contribute additional disabling symptoms as to warrant 
the assignment of a 30 percent evaluation for severe impairment 
due to left foot injury residuals under Diagnostic Code 5284. 
The evidence also does not demonstrate that there is actual 
tissue loss, nail abnormalities, color changes, locally impaired 
sensation, or hyperhidrosis clinically attributable to his 
history of cold injury of the left foot, in addition to his 
demonstrated minimal arthritic changes and subjective complaints 
of pain and sensitivity to cold, such that a 30 percent 
evaluation under Diagnostic Code 7122 may be assigned to the left 
foot. 

In view of the foregoing discussion, the Board concludes that the 
weight of the evidence is against the Veteran's claims for 
increased evaluations above 10 percent for cold injury residuals 
of his right foot prior to March 9, 2010; above 10 percent for 
cold injury residuals of his left foot prior to July 14, 2004; 
and above 20 percent for cold injury residuals of his left foot 
from July 14, 2004. The Board also concludes that the evidence 
supports the assignment of a 20 percent evaluation, and no 
higher, for cold injury residuals of his right foot from March 9, 
2010. 

(b.) Extraschedular consideration

To the extent that the Veteran claims that his service-connected 
bilateral cold injury residuals of his feet are productive of 
impairment that transcends the normal rating schedule, the Board 
finds that there is no objective clinical evidence of an 
exceptional or unusual disability picture associated with his 
cold injury residuals of his feet, with such related factors as 
marked interference with employment or frequent periods of 
hospitalization, as to render impractical the application of the 
regular schedular standards. The clinical evidence establishes 
that the Veteran's service-connected disabilities, by themselves, 
do not produce a greater impact on his occupational capacity that 
renders impractical the criteria contemplated by the applicable 
rating schedule as contained in 38 C.F.R. § 4.71a, Diagnostic 
Code 5284, and 38 C.F.R. § 4.104, Diagnostic Code 7122. The 
evidence indicates that the Veteran does not require frequent 
hospitalization for his cold injury residuals of his feet. The 
Veteran is also demonstrably able, by his own admission, to 
engage in physical activities such as playing golf. As such, the 
current state of his impairment of either foot due to cold injury 
residuals is adequately contemplated in the criteria for the 
schedular evaluations presently assigned. See Thun v. Peake, 22 
Vet. App. 111, 115 (2008). Therefore, the Board is not required 
to discuss the possible application of an extraschedular rating 
under the provisions of 38 C.F.R. § 3.321(b)(1) (2010). See 
Shipwash v. Brown, 8 Vet. App. 218, 227 (1995); Fisher v. 
Principi, 4 Vet. App. 53 (1993).

ORDER

An initial evaluation greater than 10 percent for residuals of 
cold injury of the right foot prior to March 9, 2010 is denied.

A 20 percent initial evaluation for residuals of cold injury of 
the right foot from March 9, 2010 is granted, subject to 
controlling regulations applicable to the payment of monetary 
benefits.

An initial evaluation greater than 10 percent for residuals of 
cold injury of the left foot prior to July 14, 2004 is denied.

An initial evaluation greater than 20 percent for residuals of 
cold injury of the left foot from July 14, 2004 is denied.

____________________________________________
BARBARA B. COPELAND
Veterans Law Judge, Board of Veterans' Appeals

 Department of Veterans Affairs