﻿Citation Nr: AXXXXXXXX
Decision Date: 09/30/20 Archive Date: 09/30/20

DOCKET NO. 200717-91591
DATE: September 30, 2020

ORDER

Entitlement to an effective date earlier than to March 14, 2017, for the award of service connection for Parkinson’s disease with right upper extremity bradykinesia, tremors and muscle rigidity and stiffness is denied.

Entitlement to an effective date earlier than to March 14, 2017, for the award of service connection for left upper extremity bradykinesia, tremors and muscle rigidity and stiffness secondary to Parkinson’s disease is denied.

Entitlement to an effective date earlier than to March 14, 2017, for the award of service connection for right lower extremity bradykinesia, tremors and muscle rigidity and stiffness secondary to Parkinson’s disease is denied.

Entitlement to an effective date earlier than to March 14, 2017, for the award of service connection for left lower extremity bradykinesia, tremors and muscle rigidity and stiffness secondary to Parkinson’s disease is denied.

Entitlement to an effective date earlier than to March 14, 2017, for the award of service connection for balance impairment secondary to Parkinson’s disease is denied.

Entitlement to an effective date earlier than to March 14, 2017, for the award of service connection for urinary problems secondary to Parkinson’s disease is denied.

Entitlement to an effective date earlier than to March 14, 2017, for the award of service connection for bowel condition secondary to Parkinson’s disease is denied.

Entitlement to an effective date earlier than to March 14, 2017, for the award of service connection for stooped posture secondary to Parkinson’s disease is denied.

Entitlement to an effective date earlier than to March 14, 2017, for the award of service connection for loss of sense of smell secondary to Parkinson’s disease is denied.

Entitlement to an effective date earlier than to March 14, 2017, for the award of service connection for sexual dysfunction secondary to Parkinson’s disease is denied.

Entitlement to an effective date earlier than March 14, 2017, for the award of Dependents’ Educational Assistance (DEA) is denied.

REMANDED

Entitlement to service connection for back condition (also claimed as back injury) is remanded. 

Entitlement to service connection for a head injury is remanded.

Entitlement to service connection for prostate condition is remanded.

Entitlement to service connection for diabetes (DM) is remanded.

Entitlement to service connection for heart condition is remanded.

Entitlement to service connection for skin cancer - melanoma is remanded.

Entitlement to service connection for hypertension (HTN) (claimed as high blood pressure is remanded.

Entitlement to service connection for headaches is remanded.

Entitlement to service connection for shoulder replacement is remanded. 

Entitlement to service connection for bilateral knee condition is remanded.

Entitlement to an initial rating in excess of 40 percent for Parkinson’s disease with right upper extremity bradykinesia, tremors, and muscle rigidity, and stiffness is remanded.

Entitlement to an initial rating in excess of 30 percent for Parkinson’s disease with left upper extremity bradykinesia, tremors, and muscle rigidity, and stiffness is remanded.

Entitlement to an initial rating in excess of 20 percent for Parkinson’s disease with right lower extremity bradykinesia, tremors, and muscle rigidity, and stiffness is remanded.

Entitlement to an initial rating in excess of 20 percent for Parkinson’s disease with left lower extremity bradykinesia, tremors, and muscle rigidity, and stiffness is remanded.

Entitlement to an initial rating in excess of 40 percent for urinary problems secondary to Parkinson’s disease is remanded.

Entitlement to an initial rating in excess of 30 percent for balance impairment secondary to Parkinson’s disease is remanded.

Entitlement to an initial rating in excess of 20 percent for stooped posture secondary to Parkinson’s disease is remanded.

Entitlement to an initial rating in excess of 10 percent for bowel condition is remanded.

Entitlement to an initial compensable rating for loss of sense of smell secondary to Parkinson’s disease is remanded.

Entitlement to an initial compensable rating for sexual dysfunction secondary to Parkinson’s disease is remanded.

Entitlement to special monthly compensation (SMC) at a rate greater than L (the rate for regular aid and attendance) is remanded.

FINDINGS OF FACT

1. The earliest effective date allowable for the award of service connection for Parkinson’s disease with right upper extremity bradykinesia, tremors, and muscle rigidity, and stiffness is March 14, 2017, the date the laws and regulations authorized presumptive service connection.

2. The earliest effective date allowable for service connection for the Veteran’s left upper extremity bradykinesia, tremors and muscle rigidity and stiffness secondary to Parkinson’s disease, is March 14, 2017, the date of service connection for Parkinson’s disease.

3. The earliest effective date allowable for service connection for the Veteran's right lower extremity bradykinesia, tremors and muscle rigidity and stiffness secondary to Parkinson’s disease, is March 14, 2017, the date of service connection for Parkinson’s disease.

4. The earliest effective date allowable for service connection for the Veteran’s left lower extremity bradykinesia, tremors and muscle rigidity and stiffness secondary to Parkinson’s disease, is March 14, 2017, the date of service connection for Parkinson’s disease.

5. The earliest effective date allowable for service connection for the Veteran’s balance impairment secondary to Parkinson’s disease, is March 14, 2017, the date of service connection for Parkinson’s disease.

6. The earliest effective date allowable for service connection for the Veteran’s urinary problems secondary to Parkinson’s disease, is March 14, 2017, the date of service connection for Parkinson’s disease.

7. The earliest effective date allowable for service connection for the Veteran’s bowel condition secondary to Parkinson’s disease, is March 14, 2017, the date of service connection for Parkinson’s disease.

8. The earliest effective date allowable for service connection for the Veteran’s stooped posture secondary to Parkinson’s disease, is March 14, 2017, the date of service connection for Parkinson’s disease.

9. The earliest effective date allowable for service connection for the Veteran’s loss of sense of smell secondary to Parkinson’s disease, is March 14, 2017, the date of service connection for Parkinson’s disease.

10. The earliest effective date allowable for service connection for the Veteran’s sexual dysfunction secondary to Parkinson’s disease, is March 14, 2017, the date of service connection for Parkinson’s disease.

11. Eligibility for DEA benefits under 38 U.S.C. Chapter 35 arose on March 14, 2017.

CONCLUSIONS OF LAW

1. The criteria for an effective date earlier than March 14, 2017, for service connection for Parkinson’s disease with right upper extremity bradykinesia, tremors, and muscle rigidity, and stiffness have not been met. 38 U.S.C. § 5110; 38 C.F.R. § 3.400.

2. The criteria for an effective date earlier than March 14, 2017, for the award of service connection left upper extremity bradykinesia, tremors and muscle rigidity and stiffness secondary to Parkinson’s disease, have not been met. 38 U.S.C. § 5110; 38 C.F.R. § 3.400.

3. The criteria for an effective date earlier than March 14, 2017, for the award of service connection for right lower extremity bradykinesia, tremors and muscle rigidity and stiffness secondary to Parkinson’s disease, have not been met. 38 U.S.C. § 5110; 38 C.F.R. § 3.400.

4. The criteria for an effective date earlier than March 14, 2017, for the award of service connection left lower extremity bradykinesia, tremors and muscle rigidity and stiffness secondary to Parkinson’s disease, have not been met. 38 U.S.C. § 5110; 38 C.F.R. § 3.400.

5. The criteria for an effective date earlier than March 14, 2017, for service connection service connection for balance impairment secondary to Parkinson’s disease have not been met. 38 U.S.C. § 5110; 38 C.F.R. § 3.400.

6. The criteria for an effective date earlier than March 14, 2017, for the award of service connection for urinary problems secondary to Parkinson’s disease, have not been met. 38 U.S.C. § 5110; 38 C.F.R. § 3.400.

7. The criteria for an effective date earlier than March 14, 2017, for the award of service connection for service connection for bowel condition secondary to Parkinson’s disease, have not been met. 38 U.S.C. § 5110; 38 C.F.R. § 3.400.

8. The criteria for an effective date earlier than March 14, 2017, for the award of service connection for stooped posture secondary to Parkinson’s disease, have not been met. 38 U.S.C. § 5110; 38 C.F.R. § 3.400.

9. The criteria for an effective date earlier than March 14, 2017, for the award of service connection for service connection for loss of sense of smell secondary to Parkinson’s disease, have not been met. 38 U.S.C. § 5110; 38 C.F.R. § 3.400.

10. The criteria for an effective date earlier than March 14, 2017, for the award of service connection for sexual dysfunction secondary to Parkinson’s disease, have not been met. 38 U.S.C. § 5110; 38 C.F.R. § 3.400.

11. The criteria for an effective date prior to March 14, 2017, for the grant of entitlement to DEA benefits under 38 U.S.C. Chapter 35 have not been met. 38 U.S.C. §§ 3500, 3501, 5107; 38 C.F.R. §§ 3.400, 3.807.

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran served in the U.S. Marine Corps from July 1964 to January 1969.

This matter comes before the Board of Veterans’ Appeals (Board) from rating decisions by a Department of Veterans Affairs (VA) Regional Office (RO).

The case originally arose from August 2018 and June 2019 rating decisions in the Legacy system. However, after a Supplemental Statement of the Case (SSOC) was issued in June 2020, the Veteran opted in to the modernized review system from the Appeal Modernization Act (AMA) in July 2020. See 38 C.F.R. § 19.2(d). In 2020, when the Veteran timely appealed this decision to the Board, he requested the Direct Review lane for a reevaluation of the evidence considered by the Agency of Original Jurisdiction (AOJ). Accordingly, the Board will consider the evidence of record as of the date of the June 2020 SSOC (i.e., June 26, 2020).

The Board observes that the Veteran originally sought service connection for high blood pressure. “High blood pressure” is a subjective characterization of a numerical test result and is not considered to be a disability for VA purposes. However, treatment records throughout the appeal show a diagnosis for HTN. In accordance with Clemons v. Shinseki, 23 Vet. App. 1 (2009), the Veteran’s claim for service connection has been expanded to include HTN.

For clarity the Board notes that in March 2020, the Veteran opted-in to AMA by requesting higher level review of claims for earlier effective date and increased rating for a sinus condition, tinnitus, posttraumatic stress disorder (PTSD), and a deviated nasal septum. The Veteran also requested earlier effective dates for the award of SMC based on the housebound and aid and attendance criteria. These issues were denied in an August 2020 rating decision and will not be adjudicated herein.

This appeal has been advanced on the Board’s docket pursuant to 38 C.F.R. § 20.900(c). 38 U.S.C. § 7107(a)(2).

Earlier Effective Date

1. Entitlement to an earlier effective date than March 14, 2017 for the award of service connection for Parkinson’s disease with right upper extremity bradykinesia, tremors and muscle rigidity and stiffness.

Effective March 14, 2017, 38 C.F.R. §§ 3.307 and 3.309 were amended to add eight diseases to the list of diseases associated with contaminants present in the water supply at U.S. Marine Corps Base Camp Lejeune, North Carolina, from August 1, 1953, to December 31, 1987. The amendments apply to claims received by VA on or after January 13, 2017, and claims pending before VA on that date. 82 Fed. Reg. 4173 (Jan. 13, 2017). Parkinson’s disease is a presumptive disability.

The Veteran, through his attorney, has contended that the effective date for the award of service connection for his Parkinson’s disease with right upper extremity bradykinesia, tremors and muscle rigidity and stiffness should be earlier. However, no specific argument for date of entitlement or why an earlier effective date is warranted has been provided. Instead, the Veteran’s attorney merely requests the “earliest possible effective date.”

The RO awarded the current effective date of March 14, 2017, because that date is the one on which the law was changed to add Parkinson’s disease as a condition presumed to be associated with exposure to chemicals at Camp Lejeune.

Generally, the effective date for an award of service connection and disability compensation is the day following separation from active service or the date entitlement arose if the claim is received within one year after separation from service. Otherwise, for an award based on an original claim, a claim reopened after a final allowance, or a claim for an increase, the effective date will be the date of receipt of the claim or the date entitlement arose, whichever is later. 38 U.S.C. § 5110; 38 C.F.R. § 3.400.

However, retroactive effective dates are allowed, to a certain extent, in cases where an award or increase of compensation is granted pursuant to a liberalizing law. 38 U.S.C. § 5110(g); 38 C.F.R. § 3.114(a). To be eligible for a retroactive payment under these provisions, the evidence must show that the claimant met all eligibility criteria for the liberalized benefit on the effective date of the liberalizing law or VA issue and that such eligibility existed continuously from that date to the date of claim or administrative determination of entitlement. These provisions apply to original and reopened claims, as well as claims for increase. Id.; see also McCay v. Brown, 9 Vet. App. 183(1996), aff'd, 106 F.3d 1577 (Fed. Cir. 1997). In such cases, the effective date of the award or increase shall be fixed in accordance with the facts found, but shall not be earlier than the effective date of the liberalizing law or VA issue. 38 C.F.R. § 3.114(a).

Entitlement to an earlier effective date is not warranted. The record reflects the RO received an intent to file form on June 13, 2017. Thereafter, VA received an application for service connection for the Veteran’s claim for Parkinson’s disease on January 9, 2018. As a general matter, both filings were received many years after the Veteran was discharged from service. In this regard, the effective date would be the date of receipt of the claim, as it is later than the date entitlement arose. See 38 U.S.C. § 5110; 38 C.F.R. § 3.400. However, as noted above, a liberalizing law applies and the criteria for retroactive payment pursuant to 38 C.F.R. § 3.114 are applicable.

Turning to the record, on a July 2018 VA Parkinson’s Disease Disability Benefits Questionnaire (DBQ) examination, the Veteran presented with Parkinson’s disease present since 2016. Based on this evidence, the Veteran met all eligibility criteria for service connection for Parkinson’s disease on the effective date of the liberalizing law that allows presumptive service connection for Parkinson’s disease based on exposure to chemicals at Camp Lejeune.

That said, although the Veteran has argued for an earlier effective date, as noted above, an effective date prior to March 14, 2017, is legally precluded. The controlling statute and regulation provide that the effective date for a grant of service connection is the date of receipt of the claim or the date entitlement arose, whichever is later. 38 U.S.C. § 5110(a); 38 C.F.R. § 3.400(b)(2)(i). In cases where an award or increase of compensation is granted pursuant to a liberalizing law, such as here, the effective date of the award or increase shall be fixed in accordance with the facts found, but shall not be earlier than the effective date of the liberalizing law or VA issue. 38 C.F.R. § 3.114(a).

To that end, even though the Veteran’s Parkinson’s disease was diagnosed in 2016 entitlement did not arise until March 14, 2017, when Parkinson’s disease was added to the list of presumptive conditions associated with Camp Lejeune. Accordingly, an earlier effective date based on date of diagnosis is not warranted.

To the extent that the Veteran could assert that entitlement to an earlier effective date is warranted based on direct service connection this too fails. First, as stated above, the date of claim is later in time than when entitlement arose. Second, even considering direct service-connection in arguendo, the record is negative for a competent medical opinion supporting service-connection on a direct basis. In that regard, a July 2018 VA examiner opined that the Veteran’s Parkinson’s disease was less likely than not caused by or a result of exposure to Camp Lejeune contaminated water. Indeed, the examiner provided a detailed rationale, noting that the Veteran was not diagnosed with Parkinson’s disease until 52 years following service and that his Parkinson’s disease was drug induced. The Veteran’s attorney has never asserted that the July 2018 VA examination was inadequate or deficient in any way and the Board does not find that it is inadequate. Accordingly, as there is no basis in the record for the award of service connection on a direct basis, any argument that an earlier effective date would have been awarded had the claim been granted on any other basis than a presumptive basis, must fail.

In sum, even though the Veteran’s Parkinson’s disease was diagnosed in 2016, his intent to file was not received until June 2017, and entitlement did not arise until March 14, 2017, when Parkinson’s disease was added to the list of presumptive conditions associated with Camp Lejeune. Thus, the later of the two dates is the appropriate effective date in this case and the appeal for an effective date earlier than March 14, 2017, for the award of service connection for Parkinson’s disease is denied. 

2. Entitlement to an earlier effective date than March 14, 2017, for the award of service connection for left upper extremity bradykinesia, tremors and muscle rigidity and stiffness secondary to Parkinson’s disease.

3. Entitlement to an earlier effective date than March 14, 2017, for the award of service connection for right lower extremity bradykinesia, tremors and muscle rigidity and stiffness secondary to Parkinson’s disease.

4. Entitlement to an earlier effective date than March 14, 2017, for the award of service connection for left lower extremity bradykinesia, tremors and muscle rigidity and stiffness secondary to Parkinson’s disease.

5. Entitlement to an earlier effective date than March 14, 2017, for the award of service connection for balance impairment secondary to Parkinson’s disease.

6. Entitlement to an earlier effective date than March 14, 2017, for the award of service connection for urinary problems secondary to Parkinson’s disease.

7. Entitlement to an earlier effective date than March 14, 2017, service connection for bowel condition secondary to Parkinson’s disease.

8. Entitlement to an earlier effective date than March 14, 2017, for service connection for stooped posture secondary to Parkinson’s disease.

9. Entitlement to an earlier effective date than March 14, 2017, service connection for loss of sense of smell secondary to Parkinson’s disease.

10. Entitlement to an earlier effective date than March 14, 2017, for service connection for sexual dysfunction secondary to Parkinson’s disease.

Following a review of the record, the Board finds that March 14, 2017, the currently assigned effective date for the awards of service connection for the Veteran's above listed disabilities, is the earliest date allowable. Except as otherwise provided, the effective date of an evaluation and award of compensation based on an original claim, a claim reopened after final disallowance, or a claim for increased rating will be the date of receipt of the claim or the date entitlement arose, whichever is later. See 38 U.S.C. § 5110; 38 C.F.R. § 3.400. 

Here, service connection for Parkinson’s disease was established by an August 2018 rating decision, and an effective date of March 14, 2017, was assigned. As stated above, the Board has found that the Veteran is not entitled to an earlier effective date for his service-connected Parkinson’s disease. 

Regarding the left upper, and right and left lower extremity, bradykinesia, tremors and muscle rigidity and stiffness secondary, balance impairment, urinary problems, bowel condition, and stooped posture, per the January 2018 VA 21-526EZ (Fully Developed Claim) the Veteran did not specifically file service-connection claims for these disabilities. Instead, service-connection was granted on a secondary basis once it was established that the Veteran’s underlying Parkinson’s disease was presumed to be related to contaminated water at Camp Lejeune. Thus, despite any disabilities having occurred prior to the March 14, 2017, effective date of service connection for Parkinson’s disease, as the disabilities have been granted as secondary to Parkinson’s disease, it follows that an effective date for the award of secondary service connection cannot be earlier than the effective date of service connection for the underlying Parkinson’s disease, which is March 14, 2017. See 38 C.F.R. § 3.310 (requiring a relationship to a “service-connected” disease or injury for entitlement to arise). The claims for entitlement to earlier effective dates are denied.

11. Entitlement to an earlier effective date than March 14, 2017 for the award of DEA.

The Veteran contends that he is entitled to an effective date prior to March 14, 2017, for DEA chapter 35 benefits. No specific argument has been proffered. 

Basic eligibility for DEA exists if a veteran has a permanent, total service-connected disability. 38 U.S.C. §§ 3500, 3501. A total disability may be assigned where the veteran's service-connected disabilities are rated 100 percent disabling under the rating schedule, or if the veteran is unemployable due to service-connected disabilities. 38 C.F.R. §§ 3.340, 3.341. Permanence of total disability will be taken to exist when such impairment is reasonably certain to continue throughout the life of the disabled person. 38 C.F.R. § 3.340(b).

In this case, DEA benefits were granted March 14, 2017, the date the Veteran's combined schedular rating was 100 percent. The AOJ found that the Veteran’s service-connected disabilities were permanent in nature. 

Disabilities resulting in a combined 100 percent rating as of March 14, 2017 are as follows: Parkinson’s disease with right upper extremity bradykinesia, tremors and muscle rigidity and stiffness (40 percent), left upper extremity bradykinesia, tremors and muscle rigidity and stiffness (20 percent), right lower extremity bradykinesia, tremors and muscle rigidity and stiffness (20), left lower extremity bradykinesia, tremors and muscle rigidity and stiffness (20 percent), balance impairment (30 percent), urinary problems (40 percent), bowel condition (10), and stooped posture (20). The calculation for combining the Veteran’s disabilities was done using the Combined Ratings Table found at 38 C.F.R. § 4.25. Using this table, the Veteran’s disabilities amount to a 100 percent rating.

As discussed above, the Board has found that the earliest effective date for the above service-connected disabilities is March 14, 2017. As this is the earliest effective date, and the date from which the Veteran is currently awarded DEA benefits, an earlier effective date for DEA benefits is not possible. Said more simply, as the Veteran’s service-connected disabilities did not individually, or combined, amount to a 100 percent rating under the rating schedule prior to March 14, 2017, an earlier award of DEA benefits prior to March 14, 2017, is not possible.

Accordingly, an effective date earlier than March 14, 2017, for entitlement to DEA benefits must be denied. 38 U.S.C. §§ 3501, 3510.

REASONS FOR REMAND

14. Entitlement to service connection for back condition. 

15. Entitlement to service connection for a head injury.

16. Entitlement to service connection for prostate condition.

17. Entitlement to service connection for DM.

18. Entitlement to service connection for heart condition.

19. Entitlement to service connection for skin cancer - melanoma.

20. Entitlement to service connection for HTN.

21. Entitlement to service connection for headaches.

22. Entitlement to service connection for shoulder replacement. 

23. Entitlement to service connection for bilateral knee condition.

Remand is required to correct pre-decisional duty to assist errors. The Veteran requested the RO obtain treatment medical records from his acupuncturist and health care provider Dr. L.W. These records are not in evidence. The claims file reflects the RO made two attempts to obtain these treatment records, but there is no indication following the second attempt that the Veteran was formally informed the records were deemed unavailable or informed that he needed to provide the records himself. Failure to provide formal notice to the Veteran constitutes a pre-decisional duty to assist error. That said, per the Veteran, Dr. W. treated him from 1998 through at least 2017. Given the extensive period of treatment, Dr. W.’s records are likely highly probative and an additional attempt to obtain these records must be made.

The Veteran asserts that his back, head, knee, and shoulder disabilities are in part due to injuries sustained in-service. Per the Veteran, these injuries occurred while serving in Puerto Rico and include falling into a 6 foot-hole resulting in unconsciousness and being thrown from a helicopter crash. He reports temporarily being removed from duty after both incidents. Currently, the record is negative for service treatment records (STRs) or personnel records addressing the Veteran’s reported injuries. However, after review of the record the Board finds it unclear whether the RO specifically requested the Veteran’s STRs and personnel records from his temporary period of service in Puerto Rico. Failure for the RO to verify his statements and to ensure that Puerto Rican records were in evidence constitutes a pre-decisional duty to assist error, and remand is warranted. 

In addition, VA examinations should be obtained. As to the Veteran’s claims for service connection for shoulder, head injury, and knee disabilities, current treatment records document diagnoses for osteoarthritis of the shoulder and knee, and note the Veteran is suffering from cognitive impairments. Although STRs are negative for diagnosed injury, they document reports of leg cramping and frequent headaches. Moreover, the Veteran is deemed competent to report suffering pain in his shoulder, head, and knees after sustaining a fall. He has also credibly and consistently reported his helicopter crash. Of note, a March 2019 VA examiner opined that his reports of said crash were credible to the point that it partially formed the basis for his diagnosis of PTSD which has since been service connected. 

As to post-service, a July 2011 medical evaluation contains notations that the Veteran’s osteoarthritis of the knee and shoulder, per radiologic testing, are longstanding in nature and not new. Post-service records also suggest that the Veteran suffers from cognitive impairment associated with a history of head injuries to include the Veteran’s reported head injury in-service. This collective evidence is sufficient to surmount the low bar for obtaining a VA examination as it is suggestive of a correlation between the Veteran’s claimed conditions and service. McLendon v. Nicholson, 20 Vet. App. 79, 81 (2006). As this evidence was present prior to adjudication of the Veteran’s claims, the failure to provide examinations constituted a pre-decisional duty to assist error. 

As to the Veteran’s back disability, he was afforded a January 2018 VA examination. The examiner concluded that the condition was less likely than not incurred in or caused by service. The opinion is inadequate. First, the opinion was partially predicated on the Veteran reporting a back injury prior to service on his report of medical history at the time of enlistment examination. The examiner’s discussion of this back injury raised the issue of soundness upon entry/preexisting disability, but did not adequately respond to the applicable standards of proof for preexisting conditions. Therefore a remand is required. Second, the negative opinion was partially predicated on STRs being silent for a report of a back disability. However, the examiner did not address the Veteran’s contentions of in-service injury or symptoms in and since. Importantly, the lack of contemporaneous medical evidence does not, in and of itself, render lay evidence not credible. See Buchanan v. Nicholson, 451 F.3d 1331, 1337(Fed. Cir. 2006). In the instant case, the examiner did not discuss the Veteran’s lay assertions or provide rationale to find the Veteran not credible in his assertions. Therefore, the opinion is inadequate, and an addendum opinion is required. These inadequacies were present prior to the adjudication of the Veteran’s claim, as a result they constitute a pre-decisional duty to assist error which must be corrected.

As to the claimed melanoma, the Veteran has alternatively asserted that he developed this condition due to in-service exposure to contaminants while stationed at Camp Lejeune or as result of protracted exposure to intense sun while in-service. The Veteran has yet to be afforded a VA examination opinion and such is warranted as the record meets the requirements necessary to afford him an examination. 

As to sun exposure, the Veteran reports having no sun protection while stationed in Vieques, Puerto Rico resulting in a blistering sunburn which led to his current melanoma. Of record is a September 2011 statement from the Veteran’s oncologist, M. M., M.D. made following melanoma examination. Dr. M. stated the following:

The patient has a history of more than average sun exposure and on exposure indicates that he burns and rarely gets a tan. He has had multiple, blistering sunburns and, indeed, on one occasion while in the Marine Corps the burn was of significant intensity to be characterized as sun poisoning.

Dr. M.’s statement is suggestive that the Veteran’s in-service sun exposure was relevant to the etiology of his currently diagnosed melanoma. That said, the collective evidence suggests a correlation between the Veteran’s service and his currently diagnosed melanoma such as to have warranted a VA examination prior to initial adjudication of the claim. 

Beyond this information are STRs from the Veteran’s service in India which reflect treatment for a rash, bumps, and skin discoloration which at the time were identified as allergic dermatitis. The relevance of these records in relation to the Veteran’s current disability must be addressed by an expert as it is beyond the scope of the Board’s knowledge. Colvin v. Derwinski, 1 Vet. App. 171 (1991). To that end, the Veteran’s private dermatologist Dr. S. G. explained that melanomas are difficult to identify as they come in varying colors, shapes, and sizes and can mimic other conditions. Dr. G. also specified that “even experienced dermatologists after 20-30 years are missing melanomas if they do not biopsy frequently all questionable lesions.” Given the above, an opinion is required to ascertain whether the Veteran’s in-service reported, and documented conditions, could have been misdiagnosed or precancerous. In sum, the RO’s failure to provide an examination and an opinion constituted a pre-decisional duty to assist error. Finally, the Board notes that Dr. G. and Dr. M.’s full records are not in evidence. Given their significance, the failure to request these records constitutes a pre-decisional duty to assist error. On remand, these records must be requested.

As to the claimed heart condition, the Veteran has a current diagnosis for coronary artery disease (CAD) and is service-connected for Parkinson’s disease. He has submitted a relevant treatise indicating a correlation between cardiovascular disease and Parkinson’s. This treatise suggests a correlation between his heart disability and his service-connected Parkinson’s disease such that a medical opinion is required. Colvin, 1 Vet. App. 171. As this evidence was of record prior to adjudication of the claim, failure to obtain this opinion constitutes a pre-decisional duty to assist error warranting a remand. Additionally, records suggest the Veteran’s CAD impacts his blood flow which in turn arguably effects his HTN and potentially his DM. Treatment records also suggest the Veteran’s HTN medication elevated the Veteran’s blood sugar levels thus aggravating the Veteran’s DM. No opinion has been provided addressing the significance of this evidence. As this evidence was of record prior to adjudication, a pre-decisional duty to assist has occurred warranting a remand. 

Opinions as to secondary service connection for the above claims are also warranted. A March 2019 VA examination report indicated that the Veteran’s claimed knee disabilities, melanoma, and heart disease were relevant to understanding his diagnosed PTSD; however, no opinion has been provided addressing this notation of possible correlation. As to the Veteran’s back condition, physicians’ have opined that it is generally aggravated by walking, standing, bending, and twisting. Significantly, a July 2018 VA examination confirms that the Veteran’s Parkinson’s disease diminishes his ability to stand, walk, and have a steady gait. His Parkinson’s disease also essentially freezes his body in a stooped position. An opinion is required to ascertain whether these Parkinson’s symptoms which arguably diminish the Veteran’s ability to walk, stand, bend, and twist are aggravating his spine such as to warrant secondary service connection. 

An opinion has also not been provided addressing the impact of the Veteran’s repeated falls due to his Parkinson’s disease on his currently diagnosed non-service-connected disabilities of the knees, shoulder, and back. Similarly, no opinion has been obtained as to whether the Veteran’s service-connected upper and lower extremity nerve impairment aggravate any currently diagnosed disabilities of the knees, shoulders, and back. Of note, treatment and examination records document the Veteran’s service-connected disabilities manifested in an array of impairing symptomatology to include tremors, muscular rigidity and stiffness, slowed motion, and loss of automatic movements, all of which appear to impact the functionality of the Veteran’s non-service-connected disabilities. As the above evidence was present prior to initial adjudication of the claims, failure to obtain VA opinions addressing the interconnectivity of these conditions constitutes a pre-decisional duty to assist error.

As to the head injury disability, an opinion as to whether the Veteran’s cognitive impairment is a symptom of, or worsened by, the Veteran’s Parkinson’s disease is also warranted. A July 2018 VA Parkinson’s disease examination reflects that the Veteran’s Parkinson’s causes diminished ability to focus suggesting it causes cognitive impairment. Similarly, the Veteran’s March 2019 VA examination documented distorted cognition as a symptom of PTSD; this also suggests it causes or worsens cognitive impairment. The record is also unclear whether the Veteran suffers from a distinct cognitive impairment disability separate from his PTSD. Given the ambiguity, a competent medical opinion is required. Colvin, 1 Vet. App. 171. This evidence was of record prior to the adjudication of the Veteran’s claim therefore an opinion should have been obtained. Failure to obtain such an opinion constitutes a pre-decisional error.

As to claimed headaches, STRs reflect reports of frequent headaches in-service. Post-service records document the Veteran’s service-connected sinus condition has symptoms including headaches. An opinion should have been provided which addressed the etiological relationship between the Veteran’s claimed headaches and his currently service-connected sinus condition. Specifically, an examiner should have addressed whether the Veteran’s headaches which, per a July 2018 VA examination, are a symptom associated with his sinus condition, are also a separately diagnosed disability. Id. Failure to obtain such an opinion constitutes a pre-decision duty to assist error. 

Finally, the record suggests a correlation between the Veteran’s claimed prostate disability and his service-connected urinary condition. In brief, the Veteran’s urologist, I. W., M. D., appears to indicate that presence of benign prostatic hyperplasia (BPH) symptomatology as relevant to the treatment of the Veteran’s underlying urinary issues. An opinion has not been obtained addressing the relationship, if any, between these two disabilities and such is warranted given the record. See McLendon, 20 Vet. App. at 81; Colvin, 1 Vet. App. 171. As this evidence was of record at the time of adjudication, failure to obtain this opinion constitutes a pre-decisional duty to assist error. In addition. Dr. W.’s full treatment records are neither in evidence nor appear to have been requested. Failure to request these records constitutes a pre-decisional duty to assist error which must be corrected. 

24. Entitlement to an initial rating in excess of 40 percent for Parkinson’s disease with right upper extremity bradykinesia, tremors, and muscle rigidity, and stiffness.

25. Entitlement to an initial rating in excess of 30 percent for Parkinson’s disease with left upper extremity bradykinesia, tremors, and muscle rigidity, and stiffness.

26. Entitlement to an initial rating in excess of 20 percent for Parkinson’s disease with right lower extremity bradykinesia, tremors, and muscle rigidity, and stiffness.

27. Entitlement to an initial rating in excess of 20 percent for Parkinson’s disease with left lower extremity bradykinesia, tremors, and muscle rigidity, and stiffness.

28. Entitlement to an initial rating in excess of 40 percent for urinary problems secondary to Parkinson’s disease.

29. Entitlement to an initial rating in excess of 30 percent for balance impairment secondary to Parkinson’s disease.

30. Entitlement to an initial rating in excess of 20 percent for stooped posture secondary to Parkinson’s disease.

31. Entitlement to an initial rating in excess of 10 percent for bowel condition.

32. Entitlement to an initial compensable rating for loss of sense of smell secondary to Parkinson’s disease.

33. Entitlement to SMC at a rate greater than L.

A remand for examination is required. On August 17, 2018, VA Examination for Housebound Status or Permanent Need for Aid and Attendance, the Veteran’s physician noted impaired ability to walk but emphasized the Veteran could still drive safely and had a good grip. VA examination in July 2018 noted tremors that were moderate in severity. Subsequent to these examinations, within the Veteran’s VA Form 9 correspondence, his attorney asserted that his disabilities are so severe that they cause loss of use of his lower extremities. In addition, in a June 11, 2020, affidavit the Veteran reported worsening in his balance, severe tremors, and an inability to pick up small items. Such statements indicate worsening in the Veteran’s Parkinson’s disease. Given this information indicating worsening, the Veteran should be afforded a new VA examination as to the current severity of his Parkinson’s disease. As a Parkinson’s disease examination includes consideration of the Veteran’s bowel, urinary, smell, stooping, extremity bradykinesia, tremors, and muscle rigidity, and stiffness, and balance these claims should also be remanded for new VA examination. Snuffer v. Gober, 10 Vet. App. 400(1997); Caffrey v. Brown, 6 Vet. App. 377 (1994). As the Veteran and his representative’s statements were in evidence prior to adjudication and a new VA examination was not obtained, a pre-decisional duty to assist error occurred and a remand is required.

Additionally, the claims file reflects on-going treatment for Parkinson’s disease from Action Potential physical therapy. Currently, the claims file only contains partial records with no formal request being made by the RO to obtain these relevant records. Failure to obtain these relevant records following receiving notice of their existence constitutes a pre-decisional error which must be corrected on remand.

The Veteran’s sexual dysfunction is currently evaluated as noncompensable and rated by analogy under DC 7522 for penis, deformity, with loss of erectile power. DC 7522 allows for a 20 percent rating when the evidence shows both loss of erectile power and a physical deformity of the penis. As stated above, the Veteran’s complete urologic records are not in evidence, therefore adjudication of this pending claim for increased rating is currently inappropriate. In addition, although the Veteran was afforded a July 2018 VA Parkinson’s examination wherein an examiner opined the Veteran’s sexual dysfunction was severe in nature, the record is negative for physical examination of the Veteran’s penis to detect deformity. Failure to provide such an examination and to obtain records constitutes a pre-decisional duty to assist error, and remand for correction is warranted.

As it relates to the issue of entitlement to SMC at a rate greater than aid and attendance, this issue may be impacted by findings made regarding the Veteran’s Parkinson’s related disabilities. Of note, the Veteran’s argument for entitlement to greater aid is predicated on his disabilities resulting in loss of use of his lower extremity. Therefore, the failure of the RO to obtain current VA examinations and records also constitutes a duty to assist error with regard to the SMC claim, and the matter must be remanded.

The matters are REMANDED for the following action:

1. Obtain complete service treatment records and service personnel records for any period of service in Puerto Rico. Document all requests for information as well as all responses in the claims file.

2. After obtaining the necessary authorization from the Veteran, obtain and associate with the claims file any identified relevant private medical records. All attempts to secure these records must be documented in the record. If any requested records are unavailable, the Veteran should be notified of such in accordance with 38 C.F.R. § 3.159(e). The Board is particularly interested in records from Dr. I. W., Dr. L. W., Dr. S. G., and Dr. M.M., as well as Action Potential Physical Therapy.

Following conducting the necessary development then:

3. Schedule the Veteran for an examination by an appropriate clinician to determine the nature and etiology of any heart disabilities. After reviewing the claims file and examining the Veteran, the examiner should provide an opinion as to whether it is at least likely as not that the Veteran’s heart disability: 

(a.) was proximately due to the Veteran’s service-connected Parkinson’s disease disability. 

(b.) underwent any incremental increase in disability, regardless of its permanence, due to the service-connected Parkinson’s disease. The term “incremental increase in disability” means additional impairment of earning capacity. Objective measurement, or numerical quantification, is not required to ascertain an increase in disability. Moreover, any “incremental increase in disability” need not be permanent. 

(c.) Note, the Veteran submitted relevant treatise indicating a correlation between cardiovascular disease and Parkinson’s. This treatise suggests a correlation between his heart disability and his Parkinson’s disease such that a medical opinion is addressing the treatise in relation to the record is required.

(d.) Note, treatment records suggest the Veteran’s HTN medication elevated the Veteran’s blood sugar levels thereby indicating HTN aggravated the Veteran’s DM. Records also suggest the Veteran CAD impacts his blood flow which in turn effects his HTN and potentially his DM. If service connection is established for CAD or another heart disability, an opinion as to etiological relationship between these conditions and the Veteran’s claimed DM and HTN must be provided.

4. Schedule the Veteran for an examination by an appropriate clinician to determine the nature and etiology of any prostate disability. After reviewing the claims file and examining the Veteran (if deemed necessary), the examiner should provide an opinion as to whether it is at least likely as not that the Veteran’s prostate disability: 

(a.) was proximately due to the Veteran’s service-connected urinary condition secondary to his Parkinson’s disease disability. 

(b.) underwent any incremental increase in disability, regardless of its permanence, due to the service-connected urinary condition secondary to his Parkinson’s disease disability. The term “incremental increase in disability” means additional impairment of earning capacity. Objective measurement, or numerical quantification, is not required to ascertain an increase in disability. Moreover, any “incremental increase in disability” need not be permanent. 

(c.) Note, the record suggests a correlation between the Veteran’s claimed prostate disability of benign prostatic hyperplasia (BPH) and his service-connected urinary condition. In brief, the Veteran’s urologist, I. W., M. D., appears to indicate that presence of BPH symptomatology was relevant to the treatment of the Veteran’s underlying urinary issues.

5. Schedule the Veteran for an examination by an appropriate clinician to determine the nature and etiology of any chronic bilateral knee and shoulder disability. After reviewing the claims file and examining the Veteran, the examiner should provide an opinion as to whether it is at least likely as not that the Veteran’s left knee and/or right knee or shoulder disability: 

(a.) had its onset in service or is otherwise etiologically related to active service. The examiner must address the clinical significance of the in-service notation of leg cramping as well as the lay statements indicating that the Veteran experienced knee pain in service. Note, as to post-service, a July 2011 medical evaluation contains notations that the Veteran’s osteoarthritis of the knee and shoulder, per radiologic testing, are longstanding in nature and not new. 

(b.) was proximately due to the Veteran’s service-connected Parkinson’s disease disability. 

(c.) underwent any incremental increase in disability, regardless of its permanence, due to the service-connected Parkinson’s disease disability. The term “incremental increase in disability” means additional impairment of earning capacity. Objective measurement, or numerical quantification, is not required to ascertain an increase in disability. Moreover, any “incremental increase in disability” need not be permanent. NOTE: The examiner must address the significance of the Veteran’s decreased mobility and falling associated with his Parkinson’s disease, and if such symptoms aggravated his currently diagnosed knee disabilities.

6. Schedule the Veteran for an examination by an appropriate clinician to determine the nature and etiology of any head injury disability, to include cognitive impairment. After reviewing the claims file and examining the Veteran, the examiner should provide an opinion as to whether it is at least likely as not that the Veteran: 

(a.) has a separate and distinct head injury disability resulting in cognitive or other impairment or merely has symptoms of cognitive impairment associated with his service-connected PTSD and/or Parkinson’s disease.

(b.) If yes to (a.) the examiner should opine whether said disability had its onset in service or is otherwise etiologically related to active service. The clinical significance of the in-service notation of headaches should be addressed as well as the lay statements of head injury. To that end, the examiner must address post-service January 2020 VA treatment records suggesting that the Veteran suffers from cognitive impairment associated with a history of head injuries, to include the Veteran’s reported head injury in-service.

(c.) was proximately due to the Veteran’s service-connected Parkinson’s disease and/or PTSD. 

(d.) underwent any incremental increase in disability, regardless of its permanence, due to the service-connected Parkinson’s disease and/or PTSD. The term “incremental increase in disability” means additional impairment of earning capacity. Objective measurement, or numerical quantification, is not required to ascertain an increase in disability. Moreover, any “incremental increase in disability” need not be permanent. 

(e.) note, a July 2018 VA Parkinson’s disease examination reflects that the Veteran’s Parkinson’s causes diminished ability to focus suggesting it causes cognitive impairment. Similarly, the Veteran’s March 2019 VA examination documented distorted cognition as a symptom of PTSD; this also suggests it causes or worsens cognitive impairment. 

7. Schedule the Veteran for an examination by an appropriate clinician to determine the nature and etiology of his skin cancer - melanoma. After reviewing the claims file and examining the Veteran (if deemed necessary), the examiner should provide an opinion as to whether it is at least likely as not that the Veteran’s melanoma: 

(a.) had its onset in service or is otherwise etiologically related to active service. The clinical significance of the Veteran’s reported in-service sunburns, extended exposure to sun, diagnosed allergic dermatitis, and conceded exposure to contaminants while stationed at Camp Lejeune must be addressed. 

The examiner must address the following:

(b.) The Veteran’s reports having no sun protection while stationed in Vieques, Puerto Rico resulting in a blistering sunburn which led to his current melanoma. The Veteran’s lay assertions of burning easily, severely, and regularly. Note, the Board concedes the Veteran’s service in Puerto Rico, Dominican Republic, and India, as such is supported by personnel records.

(c.) A September 2011 statement from the Veteran’s oncologist, Dr. M. M. made following melanoma examination. Dr. M. stated the following: The patient has a history of more than average sun exposure and on exposure indicates that he burns and rarely gets a tan. He has had multiple, blistering sunburns and, indeed, on one occasion while in the Marine Corps the burn was of significant intensity to be characterized as sun poisoning.

Dr. M.’s statement is suggestive that the Veteran’s in-service sun exposure was relevant to his currently diagnosed melanoma. This must be addressed by the examiner. 

(a.) STRs from the Veteran’s service in India reflect treatment for a rash, bumps, and skin discoloration which at the time were identified as allergic dermatitis. The relevance of these records in relation to the Veteran’s current disability must be addressed. Of note, the Veteran’s private dermatologist Dr. S. G. explained that melanomas are difficult to identify as they can be in varying colors, shapes, and sizes and can mimic other conditions. Dr. G. also specified that “even experienced dermatologists after 20-30 years are missing melanomas if they do not biopsy frequently all questionable lesions.” In light of Dr. G.’s statement an opinion is required to ascertain whether the Veteran’s in-service reported, and documented, conditions could have been misdiagnosed or precancerous. 

8. Schedule the Veteran for an examination by an appropriate clinician to determine the nature and etiology of any headache disability. After reviewing the claims file and examining the Veteran, the examiner should provide an opinion as to whether it is at least likely as not that the Veteran: 

(a.) has a separate and distinct headache disability or merely has headaches that are a symptom of his service-connected sinus condition.

(b.) has a separate headache disability, that had its onset in service or is otherwise etiologically related to active service. The clinical significance of the in-service notation of frequent headaches should be addressed as well as the lay statements. 

(c.) was proximately due to the Veteran’s service-connected sinus condition. 

(d.) underwent any incremental increase in disability, regardless of its permanence, due to the service-connected sinus condition. The term “incremental increase in disability” means additional impairment of earning capacity. Objective measurement, or numerical quantification, is not required to ascertain an increase in disability. Moreover, any “incremental increase in disability” need not be permanent. 

(e.) note, the examiner must rationalize any opinion provided against a July 2018 VA examination wherein the Veteran’s sinus condition was noted to manifest in headache symptomatology. 

9. Obtain an addendum opinion, by an appropriate clinician, to determine the nature and etiology of any chronic back disability. After reviewing the claims file, and examining the Veteran (if deemed necessary), the examiner should provide the following opinions: 

(a.) did a back condition clearly and unmistakably (undebatable) preexist the Veteran’s service? 

(b.) in responding to this question, the examiner should consider an August 1966 Report of Medical History noting a pulled back ligament prior to service.

(c.) if the examiner finds it did clearly and unmistakably preexist service, the examiner must opine whether it was clearly and unmistakably not aggravated by service. In providing an opinion on this question, the examiner must address the Veteran’s lay assertions of in-service injury. 

(d.) if the examiner finds that it either did not clearly and unmistakably preexist service, or was not clearly and unmistakably aggravated by service, the examiner must opine whether it is at least as likely as not related to an in-service injury, event, or disease, including treatment received during service.

The clinical significance of the in-service notation of a back disability should be addressed as well as the lay statements indicating that the Veteran experienced back pain in service. Note, a July 2011 medical evaluation contains notations that the Veteran’s degenerative spine disease, per radiologic testing, was longstanding in nature and not new.

(e.) was proximately due to the Veteran’s service-connected Parkinson’s disease disability. 

(f.) underwent any incremental increase in disability, regardless of its permanence, due to the service-connected Parkinson’s disease disability. The term “incremental increase in disability” means additional impairment of earning capacity. Objective measurement, or numerical quantification, is not required to ascertain an increase in disability. Moreover, any “incremental increase in disability” need not be permanent. 

The examiner must address the significance of the Veteran’s decreased mobility and falling associated with his Parkinson’s disease, and if such symptoms aggravated his currently diagnosed back disabilities. Note, as to the Veteran’s back condition, Dr. J. M. opined that it is generally aggravated by walking, standing, bending, and twisting. Significantly, VA examination confirms that the Veteran’s Parkinson’s diminishes his ability to stand, walk, and have steady gait. His Parkinson’s also essentially freezes his body in a stooped position. An opinion is required to ascertain whether these Parkinson’s symptoms which arguably diminish the Veteran’s ability to walk, stand, bend, and twists are aggravating his spine such as to warrant secondary service connection.

10. Afford the Veteran a VA examination by an examiner with sufficient expertise to determine the current severity of his service-connected Parkinson’s disease and left upper, and right and left lower extremity bradykinesia, tremors and muscle rigidity and stiffness secondary, balance impairment, urinary problems, bowel condition, and stooped posture. The electronic records should be made available to and reviewed by the examiner. Ensure the examiner provides all information required for rating purposes. The examiner should specify whether the Veteran’s service-connected lower extremity disabilities amount to loss of use.

11. Schedule the Veteran for a VA genitourinary examination with an examiner who has reviewed the claims file in conjunction with the examination. This examination must address the Veteran’s sexual dysfunction, and whether there exists a penis deformity. The most current Disability Benefits Questionnaire must be employed, and all relevant findings indicated in that questionnaire must be addressed. All opinions must be supported by a detailed rationale.

 

 

L. BARSTOW

Acting Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board J. L. Burroughs, Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.